**STATE FARM MUTUAL INSURANCE COMPANY, Appellant,**

v.

**A.R. CONN, Jr., et al., Appellees.**

No. 12–91–00075–CV.

Court of Appeals of Texas, Tyler.

Oct. 30, 1992.

Rehearing Denied Jan. 6, 1993.

Douglas J. McCarver, Nacogdoches, Molly H. Anderson, Tyler, for appellant.

John H. Seale, Jasper, Grover Russell, Jr., Center, for appellees.

RAMEY, Chief Justice.

This appeal arises from the trial court's award to Appellees, benefits provided by an uninsured ("UM")/underinsured motorist ("UIM") coverage clause of an automobile liability insurance policy issued by Appellant ("State Farm"). State Farm raises two points of error. We will reverse and render.

The stipulated facts show that Sherrie Ann Conn was killed in an automobile accident on September 3, 1989, while a passenger in an automobile owned and operated by Stephanie Ann Laux. Laux, whose automobile was insured by State Farm, proximately caused the collision. It was stipulated that Appellees had sustained damages in excess of $60,000 as a result of the death of Sherrie Ann Conn. State Farm tendered $20,000 into the registry of the Court, which was its liability limits on the Laux vehicle for injuries to one person. Additionally, because Sherrie Conn had been wearing a seatbelt at the time of the accident, State Farm tendered an additional $2,500. This $22,500 sum was then distributed to the claimants. In addition to this distribution, Sherrie Conn and her husband

owned a motor vehicle and had maintained liability insurance coverage on it through Allstate Insurance Company. That policy included UM/UIM coverage limits of $20,-000 and that sum was also distributed to the claimants. In addition to these sums, Appellees sought and were awarded by the court, the sum of $20,000 in UIM coverage under the Laux policy written by State Farm. It is from this award of $20,000 in UIM benefits that State Farm appeals.

State Farm's first point of error asserts that the trial court erred in holding that Sherrie Ann Conn was entitled to UIM benefits under its policy covering Laux's vehicle ("Laux's policy") for two reasons: (1) Laux's policy explicitly provided that the Laux vehicle was not "uninsured" as defined in that policy, and (2) the applicable exclusion from UM/UIM coverage is not contrary to the policy underlying the Insurance Code.

The pertinent portion of the Laux policy provides:

**PART C—UNINSURED/UNDERINSURED MOTORISTS COVERAGE**

**Insuring Agreement**

We will pay damages which a covered person is legally entitled to recover from the owner or operator of an uninsured motor vehicle because of bodily injury sustained by a covered person or property damage, caused by an accident. The owner's or operator's liability for these damages must arise out of the ownership, maintenance or use of the uninsured motor vehicle.

.    .    .    .    .

"Covered person" as used in this Part means:

1. You or any family member;

2. Any other person occupying your covered auto;

3. Any person for damages that person is entitled to recover because of bodily injury to which this coverage applies sustained by a person described in 1 or 2 above.

.    .    .    .    .

"Uninsured motor vehicle" means a land motor vehicle or trailer of any type,

.    .    .    .    .

4. Which is an underinsured motor vehicle. An underinsured motor vehicle is one to which a liability bond or policy applies but its limit of liability:

a. is less than the limit of liability for this coverage; or

b. has been reduced by payment of claims to an amount less than the limit of liability for this coverage.

*However, "uninsured motor vehicle" does not include any vehicle* or equipment

1. *Owned by or furnished or available for the regular use of you or any family member.* (emphasis added)

TEX.INS. CODE ANN. art. 5.06–1(1) requires that automobile liability insurance provide underinsured insurance coverage unless the insured rejects such coverage in writing.

Article 5.06–1(2)(b) states:

The term "underinsured motor vehicle" means that insured motor vehicle on which there is valid and collectible liability insurance coverage with limits of liability for the owner or operator which were originally lower than, or have been reduced by payment of claims arising from the same accident to, an amount less than the limit of liability stated in the underinsured coverage of the insured's policy.

Article 5.06–1(2)(c) states:

The State Board of Insurance is hereby authorized to promulgate the forms of the uninsured and underinsured motorist's coverages. The Board may also, in such forms, define "uninsured motor vehicle" to exclude certain motor vehicles whose operators are in fact uninsured.

Pursuant to these provisions, the State Board of Insurance defined "uninsured vehicle" and this definition was used in the definition in the Laux policy.

There is no doubt that the exclusionary language used in the Laux policy excludes the Laux vehicle's occupants from UM/UIM coverage thereunder. Appellees do

not dispute the meaning of the exclusion. Instead, they allege that under *Stracener v. United Services Automobile Association*, 777 S.W.2d 378 (Tex.1989), the policy exclusion is invalid and unenforceable. Therefore, the question before us is whether such exclusionary language, when applied to the facts of this case, is not consistent with and does not comport with the intent of the legislature when it enacted Article 5.06–1.

*Stracener* involved a two-car accident in which Stracener, a passenger, was killed when the car in which she was riding was struck from the rear by a vehicle driven by Lampe. Stracener was covered by four insurance policies which when combined, exceeded the limits of Lampe's policy's liability limits. The parties were in disagreement over whether the amount of multi-policy insurance coverage available could be stacked to determine whether Lampe was an underinsured motorist. The *Stracener* court allowed the stacking of coverage and held that "a negligent party is underinsured whenever the available proceeds of his liability insurance are insufficient to compensate for the injured party's actual damages." *Stracener*, 777 S.W.2d at 380. The court also clarified the setoff provision in article 5.06–1(5). Disagreeing with previous constructions of the statute, the *Stracener* court reviewed the underlying policy behind art. 5.06–1 and stated:

> Article 5.06–1 is to be construed, liberally to give full effect to the public policy which led to its enactment. (citations omitted) The purpose of the statute, as stated therein is "the protection of persons insured thereunder who are legally entitled to recover damages from owners and operators of uninsured or underinsured vehicles ..." TEX.INS. CODE ANN. art. 5.06–1(1) (Vernon 1981).

*Id.* at 382. That court further stated:

> By purchasing this [UIM] coverage along with basic liability coverage, the insured has expressed an intent not only to protect others from his or her own negligence but also to protect that person's [the insured's] own family and guests from *the negligence of others.* (emphasis added)

*Id.* at 384.

While neither the facts nor the issues involved in *Stracener* are similar to those in the present case, *Stracener's* analysis of the underlying purpose of art. 5.06–1 has often been used in analyzing other art. 5.06–1 related issues.

For example, in *Briones v. State Farm Mut. Auto. Ins.*, 790 S.W.2d 70 (Tex.App.—San Antonio 1990, writ denied), also relied upon by Appellees, the court used the *Stracener* policy considerations to defeat a portion of the UM/UIM exclusionary definition not in issue here. In *Briones*, the claimant, Briones, was injured in a one-vehicle accident while a passenger in a vehicle owned by his uninsured employer and driven by an uninsured co-worker. Briones filed claim under the UM/UIM provisions of his personal automobile policy, which contained the same exclusion as the policy in question here: an exclusion for vehicles owned by or available for the regular use of the insured. Although Briones had the regular use of the truck involved and his policy had an exclusion for this use, the court held that the exclusion was invalid based on the *Stracener* decision that those clauses in an insurance policy which are not consistent with and do not further the purpose of Article 5.06–1 are invalid.

In reaching its decision, the *Briones* court noted that the legislature's initial objective in enacting the UM/UIM statute was the protection of conscientious motorists from "financial loss caused by negligent financially irresponsible motorists ..." *Id.* 790 S.W.2d at 73 *quoting* Act of Oct. 1, 1967, ch. 202 sec. 3, 1967 Tex.Gen. Laws 448, 449. *Briones* also focused on the statute's stated purpose: "[The] *protection of persons insured* thereunder who are legally entitled to recover damages *from* owners or operators of *uninsured motor vehicles." Id.*, 790 S.W.2d at 73. (emphasis added). The court stated that an insured's intent in purchasing UM/UIM coverage *in addition to* liability coverage was to protect the insured's family and guests from the *negligence of others. Id.*,

790 S.W.2d at 73. As noted by the *Briones* court, to ascertain whether a particular exclusionary provision in a UM/UIM policy is valid it must be determined "whether the invocation of the exclusion would, *under the circumstances of the particular case under consideration,* operate to deprive an insured of the protection required by the Texas Uninsured Motorist Statute." *Id.,* 790 S.W.2d at 74 *citing Westchester Fire Insurance Co. v. Tucker,* 512 S.W.2d 679, 685 (Tex.1974).

We are not in disagreement with the decisions in *Stracener* and *Briones;* however, the facts and issues there are distinguishable from the instant case. Consequently, when we apply the underlying guiding principles of *Stracener* and *Briones* to the circumstances here, a different result is produced.

Here, the Appellees collected benefits under the liability provision of Laux's policy as well as UIM benefits under Sherrie Conn's policy. Additionally, Appellees now seek to recover UIM benefits under Laux's policy, despite the explicit language of that policy which makes them ineligible for UIM coverage. The facts and issues of this case are analogous to those found in *Rosales v. State Farm Mut. Auto. Ins. Co.,* 835 S.W.2d 804 (Tex.App.—Austin, no writ history). In that case, Rosales and Rivera were passengers in Barrett's automobile when it collided with another vehicle and injured them. Barrett indisputably caused the accident. Barrett carried a State Farm policy providing UM/UIM coverage. State Farm paid Rosales and Rivera the maximum amount of liability insurance coverage available under Barrett's policy. In addition, Rosales and Rivera received UIM benefits from their own policies. Rosales and Rivera, nevertheless, made claims against Barrett's UIM coverage which contained the same exclusion at issue here. State Farm denied the claims, and a lawsuit ensued. The trial court granted summary judgment for State Farm, and the claimants appealed. In affirming the trial court's summary judgment, the *Rosales* court stated that unlike *Stracener,* cited by the claimants, the issue before the *Rosales* court was "whether Rosales and Rivera

may recover both liability and UIM benefits *under a single insurance policy."* This issue, the court noted, differed from the issue of stacking coverage under separate insurance policies:

> We know of no case where a Texas court has permitted an injured passenger to obtain both liability and UIM benefits under a single insurance policy, and appellants cite us to no such authority. Moreover, a number of Texas courts have upheld limitations on UM/UIM coverage in recent years without concluding that those limitations contravene public policy. (citations omitted) ... We believe that invalidating the definition exclusion in the present cause would not further the purpose of the UM/UIM statute since nothing in the record indicates that Barrett was a "financially irresponsible motorist."

*Id.,* at 805–806.

We also find pertinent the recent decision of the Fort Worth Court of Appeals in *Scarborough v. Employers Cas. Co.,* 820 S.W.2d 32 (Tex.App.—Forth Worth 1991, writ filed). In that case, Barbara Scarborough was a passenger in a car driven by her husband. Her husband lost control of the car which jumped a median and collided with the on-coming traffic. Barbara and her husband were both insured under the terms of the car policy. Barbara was injured and sued her husband for damages and also sued their insurer for UIM benefits. The trial court granted partial summary judgment for the insurer, and the Fort Worth Court of Appeals affirmed.

In affirming the trial court's judgment, the Fort Worth court relied on the following statement by the Supreme Court in *Stracener:*

> By purchasing this coverage along with basic liability, the insured has expressed an intent not only to protect others from his or her own negligence but also to protect that persons own family and guests from the negligence of *others.* (Emphasis added.)

*Stracener* at 384.

The Fort Worth court reasoned that the word "others" meant negligence of strang-

ers to the policyholders, not Appellant's husband. It then held *Stracener* to be distinguishable upholding the validity of the exclusionary clause.

The facts in *Rosales, Scarborough* and the present case are similar in several respects. In each case, an insured claimant made a claim for benefits against the insured driver's UM/UIM coverage. In each instance, the driver of the insured vehicle was at fault, and the claimant was a passenger in the insured's vehicle. Under the terms of each insured driver's standard UM/UIM policy, the vehicle's occupants were excluded from UM/UIM coverage. Finally, each claimant sought to recover both liability and UM/UIM benefits under a single policy.

We find the decisions in *Rosales* and *Scarborough* persuasive. To invalidate the definitional exclusion for the Laux vehicle in the instant case would not further the purpose of the UM/UIM statute since Laux was not a "financially irresponsible motorist" as described in *Briones*, 790 S.W.2d at 73. Moreover, we agree with State Farm's argument that allowing Appellees to recover UM/UIM benefits under the Laux policy would, in effect, transform UM/UIM coverage into liability insurance. An insured contracts for *UM/UIM coverage* to protect his family and guests from the *negligence of others*, not from his own negligence. *See Stracener*, 777 S.W.2d at 184, and *Briones*, 790 S.W.2d at 73.

We sustain State Farm's first point of error. Because State Farm's second point of error concerns alleged error in the calculation of prejudgment interest on the trial court's award of UIM benefits under the Laux policy, we need not address it.

The judgment of the trial court is reversed, and judgment is rendered that Appellees take nothing.

All costs of appeal are charged to the Appellees.