**Harry JANKOWIAK and Pam Jankowiak, Individually and as next Friend of Lacy Jankowiak, Appellants,**

v.

**ALLSTATE PROPERTY & CASUALTY INSURANCE COMPANY, Appellee.**

**No. 14–05–00072–CV.**

Court of Appeals of Texas, Houston (14th Dist.).

Aug. 8, 2006.

Michael M. Essmyer, Houston, for appellants.

Nomaan Husain, Houston, for appellees.

Panel consists of Justices HUDSON, FOWLER, and SEYMORE.

## OPINION

J. HARVEY HUDSON, Justice.

This is an appeal from a summary judgment denying a claim for uninsured motorist coverage. Harry and Pam Jankowiak, individually and as next friends of their minor daughter, Laci Jankowiak, (the "Jankowiaks") filed suit against Allstate Property & Casualty Insurance Company

("Allstate") and others for bodily injuries Laci suffered in a car accident. The trial court granted Allstate's motion for summary judgment and the Jankowiaks appeal, arguing (1) the trial court improperly construed the insurance policy and, (2) if the trial court properly construed this contract, it violates public policy. We reverse and remand.

## FACTUAL AND PROCEDURAL BACKGROUND

On June 9, 2002, Laci Jankowiak was a passenger in a car being driven by Daniel Dellasala, Jr. when they were involved in a car accident with Alejandra Salas, an uninsured motorist. The Jankowiaks sued Salas, Daniel Dellasala, Sr. as next friend of Daniel Dellasala, Jr., Allstate (the Dellasala insurer), and their own insurer. The Jankowiaks alleged both drivers were at fault and that Laci suffered injuries greatly exceeding the full amount of the Dellasala insurance policy's liability and uninsured/underinsured motorist ("UM") limits.[1]

The Jankowiaks settled with their own insurer for their policy's $20,000 maximum UM coverage. The Jankowiaks also settled with Allstate for the Dellasala policy's $25,000 limit for liability coverage. Despite these recoveries, the Jankowiaks allege these payments fall short of Laci's actual damages. Thus, the Jankowiaks sought an additional $25,000 from Allstate under the policy's limit of liability for UM coverage.

Allstate moved for summary judgment, arguing the policy allowed only one recovery for each person injured in one accident. The trial court severed the Jankowiaks' claim for UM benefits and granted Allstate's motion for summary judgment. On appeal, the Jankowiaks contend the trial court improperly construed the policy and, if the trial court's construction was proper, the contract violates public policy.[2]

## STANDARD OF REVIEW

To prevail on a traditional motion for summary judgment, a defendant must establish the absence of a genuine issue of material fact, so that judgment should be granted as a matter of law. TEX.R. CIV. P. 166a(c). We review the granting of a motion for summary judgment de novo, taking as true all evidence favorable to the nonmovant and making all reasonable inferences and resolving any doubts in the nonmovant's favor. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex.2005). A defendant, as the movant, is entitled to

---

1. Allstate stipulated that the Jankowiaks *claimed* Laci's injuries exceed the policy coverage, and that "the nature of the claim to be appealed is as set out in the Motion for Summary Judgment and the Plaintiffs' Response thereto . . . ." The plaintiffs' response alleged both drivers were at fault. In its Motion for Summary Judgment, Allstate did not mention fault or the extent of Laci's injuries. Allstate relied in part, however, upon Plaintiff's Third Amended Original Petition as summary judgment evidence. *See Laidlaw Waste Sys. (Dallas), Inc. v. City of Wilmer*, 904 S.W.2d 656, 660–61 (Tex.1995) (stating that pleadings, even if sworn or verified, are generally not competent summary judgment evidence). This petition described Laci's injuries as significant, including disfigurement and the pos-

sibility of another surgery to remove glass from her eye. The petition also alleged Laci's injuries were proximately caused by both drivers. We treat these fact issues as undisputed for purposes of this appeal, as both parties contest a purely legal issue dependent upon the existence of the facts presented by the Jankowiaks.

2. We take these issues in the order presented by the Jankowiaks. *See Tex. Farmers Ins. Co. v. Murphy*, 996 S.W.2d 873, 878 (Tex.1999) (". . . a court should not decide the question of public policy without first determining the contractual rights of the parties under the policy.").

summary judgment if at least one element of the plaintiff's theory of recovery is disproved, or if the defendant pleads and conclusively establishes each essential element of an affirmative defense, thereby rebutting the plaintiff's cause of action. *Am. Tobacco Co., Inc. v. Grinnell,* 951 S.W.2d 420, 425 (Tex.1997).

## LEGISLATIVE HISTORY OF UNINSURED/UNDERINSURED MOTORIST INSURANCE

In 1967, the legislature mandated that no automobile liability insurance policy could be issued in Texas without uninsured motorist protection unless the insured expressly rejected such coverage. Act of May 3, 1967, 60th Leg., R.S., ch. 202, § 1, 1967 Tex. Gen. Laws 448 (amended 2005) (current version at TEX. INS.CODE ANN. ART. 5.06–1 (Vernon Supp.2005)). The stated intent of the legislation was "to provide a means of protecting the conscientious and thoughtful motorist against [a loss caused by negligent, financially irresponsible motorists]." *Id.*

The statute originally provided coverage only for bodily injury sustained by an uninsured motorist. However, in 1977, the legislature amended the statute to provide *four* distinct coverages: (1) *uninsured* motorist *bodily injury* coverage; (2) *uninsured* motorist *property* coverage; (3)

*underinsured* motorist *bodily injury* coverage; and (4) *underinsured* motorist *property* coverage. Act of May 6, 1977, 65th Leg., R.S., ch. 182, § 1, 1977 Tex. Gen. Laws 370 (amended 2005) (current version at TEX. INS.CODE ANN. ART. 5.06–1).[3] The amount of these coverages could not, then or now, be less than that prescribed by the Texas Motor Vehicle Safety–Responsibility Act. Act of May 3, 1967, 60th Leg., R.S., ch. 202, § 1, 1967 Tex. Gen. Laws 448 (amended 2005) (current version at TEX. INS.CODE ANN. ART. 5.06–1). However, the insured had the prerogative to purchase additional UM coverage as long as such coverage did not exceed the "limits of liability specified" in the bodily injury or property damage "liability provisions of the insured's policy." Act of May 6, 1977, 65th Leg., R.S., ch. 182, § 1, 1977 Tex. Gen. Laws 370.

Regarding the question of whether an insured could recover under more than one coverage in a single policy, the statute expressly provided for an insured, who purchased collision and UM property damage coverages, to recover under either, but not both. *Id.*[4] By its silence, the statute seemed to infer that all other combinations of coverages were permissible. *See Mid–Century Ins. Co. v. Kidd,* 997 S.W.2d 265, 274 (Tex.1999) (stating lack of statutory regulation of personal injury protection

---

3. Richard Geiger, who helped draft the legislation, testified in favor of Senate Bill 1256 before the Economic Development Committee and said the bill was intended to make a "distinction among the four coverages that are available ... [and] it was our intention in drafting the bill that [the consumer] could buy all or any part of the package." *Insurance Code: Hearings on S.B. 1256 Before the Senate Comm. On Econ. Dev.,* 65th Leg., R.S. 2–3 (May 2, 1977) (statement of Richard Geiger representing the Texas Association of Fire and Casualty Companies) (transcript on file with the Houston Public Library.)

4. The Texas Department of Insurance defines collision coverage as that which pays for damage to an insured's car without regard as to who caused the accident. The insurer must pay for the repair up to the actual cash value of the vehicle, less the deductible. Texas Department of Insurance, http://tdi.state.tx.us/consumer/glossary.html# U (last visited July 27, 2006). Uninsured/underinsured coverage is defined as paying for the insured's injuries and property damage caused by a hit-and-run driver or a motorist without liability insurance. It also pays when medical and car repair bills are higher than the other driver's liability coverage. *Id.*

(PIP) double recoveries suggests such issues should be resolved by contract between the parties). Two years later, the prohibition against combining collision and UM property damage coverages was amended to provide that if "neither coverage is sufficient alone to cover all damage resulting from a single occurrence, the insured may recover under both coverages." Act of May 24, 1979, 66th Leg., R.S., ch. 626, § 1, 1979 Tex. Gen. Laws 1418 (amended 2005) (current version at TEX. INS.CODE ANN. ART. 5.06–1). Throughout the various permutations of the statute, the legislature has neither intimated nor suggested that bodily injury liability and UM bodily injury coverages cannot both be recovered where neither is sufficient alone to cover the insured's actual damages. The legislature's silence suggests this issue should be determined by the contract. *Kidd*, 997 S.W.2d at 274.

## CONTRACT CONSTRUCTION

■ In their first issue, the Jankowiaks claim the trial court erred when it interpreted the Dellasala insurance policy to mean $25,000 is Allstate's maximum limit of liability for Laci's injuries under both the UM and liability coverages. We interpret insurance policies according to the rules of contractual construction. *Am. Mfrs. Mut. Ins. Co. v. Schaefer*, 124 S.W.3d 154, 157 (Tex.2003).[5] Policy provisions that are inconsistent with express statutory requirements or purposes are invalid. *Kidd*, 997 S.W.2d at 271–72.[6]

Allstate rests its position on the following language in the bodily injury liability section of the policy:

> The limit of liability shown in the Declarations for "each person" for bodily injury liability is our maximum limit of liability for all damages for bodily injury sustained by any one person in any one motor vehicle accident.... This is the most we will pay regardless of the number of ... [c]laims made ... [or] [v]ehicles involved in the accident.

This language also appears in the policy's UM coverage. The declarations page lists the limits of liability for both UM and liability coverages at $25,000 per person. Thus, Allstate contends that $25,000 is an absolute policy limit. In other words, Allstate argues it satisfied both its liability and UM bodily injury obligations under the policy by tendering a single payment of $25,000 to the Jankowiaks.

■ When construing an insurance policy, we are obliged to read the contract as a whole and, thus, give effect to the written expression of the parties' true intent. *State Farm Life Ins. Co. v. Beaston*, 907 S.W.2d 430, 433 (Tex.1995). "Indeed, courts must be particularly wary of isolating from its surroundings or considering apart from other provisions a single phrase, sentence, or section of a contract." *Id.* (citing *Forbau v. Aetna Life Ins. Co.*,

---

5. In construing a written contract, the primary concern is to ascertain the true intentions of the parties as expressed in the instrument. *Dorsett*, 164 S.W.3d at 662. Therefore, when construing the policy's language, we give effect to all contractual provisions so that none are rendered meaningless. *Schaefer*, 124 S.W.3d at 157.

6. Although we have no way of knowing whether the insurance policy here was adopted in its entirety from a policy form issued by the Texas Department of Insurance (TDI), "Insurance Code article 5.06 mandates that the TDI adopt a policy form and endorsements for each type of motor vehicle insurance governed by Insurance Code articles 5.01 through 5.12." *Kidd*, 997 S.W.2d at 271. We note here that Texas courts "are bound to interpret the statutes and TDI-approved policy provisions as written." *Id.* (citing *Kemp v. Fidelity & Cas. Co. of N.Y.*, 512 S.W.2d 688, 690 (Tex.1974)).

876 S.W.2d 132, 133–34 (Tex.1994)). Here, the declarations page lists separate policy limits for (1) liability coverage, (2) uninsured/underinsured motorist coverage, (3) collision coverage, (4) other than collision coverage, (5) towing and labor costs coverage, and (6) rental reimbursement coverage. Each coverage specifies its own policy limit. For example, the policy limit for "towing and labor costs coverage" is $40.00, but it would be absurd to suggest that a payment of $40.00 for towing would relieve Allstate of its responsibility to pay damages under other coverages listed in the policy.[7]

Moreover, the "maximum limit of liability" language upon which Allstate relies so heavily is found not only in the liability coverage section of the policy—it is repeated under numerous coverages. For example, just like the bodily injury liability coverage section of the policy, the medical payments and personal injury protection (PIP) coverages state:

> The limit of liability shown in the Declarations for this coverage is our maximum limit of liability for each person injured in any one accident. This is the most we will pay regardless of the number of . . . [c]laims made . . . [or] [v]ehicles involved in the accident.

We must construe this policy as a whole. *Beaston,* 907 S.W.2d at 433. Because this "maximum limit of liability" language is repeated for each coverage, we interpret it not as a maximum, policy-wide, or absolute global limit, but rather as a maximum limit of recovery for each specific coverage. That is, this language limits one person's receipt of coverage benefits for bodily injury to $25,000 and, in a separate section of

the policy, it operates again to limit one person's recovery of UM benefits to $25,000 for bodily injuries sustained in one accident.

For example, a policy limit for PIP of $2,500 would be the "maximum limit of liability" owed by the insurer for that coverage. But no one could reasonably contend that a payment of $2,500 for PIP damages would relieve the insurer of its responsibility to reimburse the insured for liability and UM coverages up to their respective policy limits.

Nevertheless, Allstate attempts to bolster its position by relying upon an offset provision in the general liability coverage portion of the policy that states:

> Any payment under the Uninsured/Underinsured Motorists Coverage or the Personal Injury Protection Coverage of this policy to or for a covered person will reduce any amount that person is entitled to recover under this coverage.

Because a recovery under UM coverage "will reduce any amount" the insured is entitled to recover under liability coverage, Allstate contends the intent of the parties was to limit recovery under the policy to an absolute maximum of $25,000.

We first observe that there are no express reciprocal offset provisions in the policy. In other words, while payment under the UM coverage will reduce any amount the insured is entitled to recover under the liability coverage, payment under the liability coverage does not expressly reduce the amount the insured is entitled to recover under the UM coverage. It would seem a strange contract indeed that provides liability coverage may be

---

7. Likewise, we note that Allstate does not argue payment of the maximum PIP coverage would preclude any duty to pay under the liability or UM coverages of this policy. *See Kidd,* 997 S.W.2d at 272 (stating PIP offset

against UM benefits simply prevents insured from aggregating discrete subsections of one policy to recover in excess of actual damages.)

reduced by payments of UM damages, but UM coverage is not reduced by payments of liability damages. Thus, if we were to adopt Allstate's interpretation of the offset provision, the issue of whether an insured could recover a maximum of $25,000 or $50,000 would depend on the order of the payment of his or her claims. If a $25,000 UM claim were paid first, it would offset any potential responsibility to pay a liability claim. However, if a $25,000 liability claim were paid first (as is the case here), the insurer would still be responsible for UM claims up to an additional $25,000. While we find Allstate's interpretation of the offset provision to be unreasonable, we note that Allstate tendered $25,000 to satisfy the bodily injury liability claim. Thus, even under Allstate's interpretation of the contract, the offset provision does not absolve it of the Jankowiaks' UM claim.[8]

Further, we find a more reasonable construction of the offset provision to simply prevent an insured from recovering in excess of his or her actual damages. *See Allstate Ins. Co. v. Bonner,* 51 S.W.3d 289, 292 (Tex.2001) (stating insurer would have been liable for UM claim after paying damages under PIP coverage if insured's actual damages had exceeded amount already paid in PIP benefits). In other words, UM payments for bodily injury and/or PIP payments will reduce the amount the insured is entitled to recover under the policy's bodily injury liability coverage in the sense that an insured can-

not obtain a windfall "double recovery." For example, if the insured's actual damages were $35,000, and the insurer paid $5,000 in PIP coverage and $25,000 in UM bodily injury coverage, the most the insured could recover under his or her bodily injury liability coverage would be $5,000.

| | |
|---|---|
| 35,000.00 | (actual damages) |
| 30,000.00 | (5,000 PIP payment + 25,000 UM payment) |
| 5,000.00 | (remaining liability under bodily injury liability coverage) |

Thus, as the policy states,

> Any payment under the Uninsured/Underinsured Motorists Coverage or the Personal Injury Protection Coverage of this policy to or for a covered person will reduce any amount that person is entitled to recover under this coverage.

This construction of the offset provision would be consistent with the plain language of the UM limit of liability provision limiting recovery of UM damages to the lesser of: (1) "The difference between the amount of a covered person's damages for bodily injury ... and the amount paid or payable to that covered person for such damages, by or on behalf of persons or organizations who may be legally responsible; and" (2) "[t]he applicable limit of liability *for this coverage.*" (Emphasis added).

Finally, Allstate cites the First Court of Appeals opinion *Hanson v. Republic Insurance Company* to support its argument. 5 S.W.3d 324 (Tex.App.-Houston [1st Dist.] 1999, pet. denied).[9] However,

---

8. We reject the Jankowiaks' argument that the lack of a reciprocal provision offsetting UM coverage, especially when the offset is not reflected in the declarations page, creates an ambiguity within the policy. Such reciprocal clause could have been drafted into the policy just as easily as the clause offsetting liability coverage, had the parties intended that result.

9. Allstate also cites to *Rosales v. State Farm Mutual Automobile Insurance Company,* but we find the analysis in that case does not

apply here. 835 S.W.2d 804 (Tex.App.-Austin 1992, writ denied) (precluding two passengers who received benefits under the driver's liability insurance coverage from receiving underinsured benefits from the same policy when the driver caused the accident and the policy specified its UM provisions did not include the driver-insured's vehicle); *see also State Farm Mut. Ins. Co. v. Conn,* 842 S.W.2d 350, 350–51 (Tex.App.-Tyler 1992, writ denied) (finding definitional exclusion precluded recovery of UM benefits when driver who

the opinion of our sister court is not controlling authority here; it is useful only as persuasive authority. *Eubanks v. Mullin*, 909 S.W.2d 574, 576 n. 1 (Tex.App.-Fort Worth 1995, no writ). Moreover, we find *Hanson* unpersuasive. Thus, we are not obliged to follow its rationale.

In that case, Jon Hanson caused a car accident that left his son, Danny, permanently disabled. *Hanson*, 5 S.W.3d at 326. Danny obtained a judgment against his father exceeding $7.7 million. *Id.* at 327. The Hansons' insurance policy included liability and UM coverages,[10] each limited to $100,000. Republic Insurance Company deposited $100,000 into the court's registry as the full amount of its UM coverage limits. *Id.* at 326. The *Hanson* court found the $100,000 Republic tendered for payment of underinsured motorist claims precluded any further recovery under the policy's liability coverage because its payment of liability coverage offset what could be recovered under UM coverage, and vice versa. *Id.* at 330. The court relied on the plain wording of the policy. Essentially, the court interpreted this policy as providing a single, global policy maximum coverage of $100,000 for all damages resulting from one accident. *Id.* at 332–33 (reject-

ing the Hansons' argument that paying separate premiums for each coverage should entitle them to complete coverage under both sections by stating, "This argument conflicts with the repeated provisions in the policy . . . which unequivocally state that $100,000 is Republic's maximum amount of liability for all damages for any one auto accident."). The *Hanson* court explained this statement of maximum available coverage "is mandated and thus expressly approved" by Texas Insurance Code article 5.06–1(2)(d).[11] *Id.* at 332. However, the offset provisions cited by the court do not offset liability coverage against UM coverage, or vice versa.

The liability coverage offset provision relied upon by the *Hanson* court states:

## PART A—LIABILITY

## COVERAGE

## INSURING AGREEMENT

We will pay damages for bodily injury . . . for which any covered person becomes legally responsible because of an auto accident. . . . Our duty to settle or defend ends when our limit of liability has been exhausted.

### LIMIT OF LIABILITY

caused collision was not uninsured under the policy).

10. Although we abbreviate Uninsured/Underinsured Motorist Coverage as "UM," the *Hanson* case involved underinsured coverage and not an uninsured motorist, as in this case.

11. Article 5.06–1, entitled "Uninsured or Underinsured Motorist Coverage," states:
 . . . a policy form adopted under Article 5.06 . . . shall include provisions that, regardless of the number of persons injured, policies or bonds applicable, vehicles involved, or claims made, the total aggregate limit of liability to any one person who sustains bodily injury . . . as the result of any one occurrence shall not exceed the limit of liability for these coverages as stated in the policy. . . .

TEX. INS.CODE ANN. art. 5.06–1(2)(d) (Vernon Supp.2005). This article refers to the uninsured motorist *coverages* provided for in that article. The "total aggregate limit of liability," therefore, refers to aggregating benefits under the policy from more than one injured person, more than one applicable policy or bond, more than one vehicle involved, or more than one claim made. To the extent *Hanson* can be interpreted to mean article 5.06–1(2)(d) limits an insured's maximum amount of recovery under *both* UM and liability coverages for bodily injuries sustained in one accident, we disagree. The language of article 5.06–1(2)(d) does not refer to reaching outside UM coverage mandated by that article to affect a policy's other coverage limits.

If the limit of liability shown in the Declarations for this coverage is for combined bodily injury and property damage liability, it is our maximum limit of liability for all damages resulting from any one auto accident.

This is the most we will pay regardless of the number of:

1. Covered persons;

2. Claims made;

3. Vehicles or premiums shown in the Declarations; or

4. Vehicles involved in the auto accident.

We will apply the limit of liability to provide any separate limits required by law for bodily injury.... However, this provision will not change the total limit of liability.

*Any payment under this coverage to or for a covered person will reduce any amount that person is entitled to recover for the same damages under the Liability Coverage of this policy.*

*Id.* at 329–30. (Emphasis added). It must be kept in mind that the liability coverage in the *Hanson* policy was for *combined bodily injury and property damage* creating, essentially, one limit of liability per coverage regardless of whether damages were for injury to property or body; while, in a typical accident, an insured would present two claims—one for bodily injury and one for property damage. The italicized offset provision cited above simply provides that "[a]ny payment under this [liability] coverage to a covered person will reduce any amount that person is entitled to recover for the same damages under the Liability Coverage of this policy." Thus, if the insurer paid $40,000 in property damage, only $60,000 would remain to pay any subsequent bodily injury claims.

Nothing in the Hansons' policy suggests that payment of liability claims would re-

duce the amount recoverable under UM claims. In short, we find the *Hanson* opinion was wrongly decided, and we decline to follow it.

Returning to the policy in this appeal, when read in its entirety, the insurance contract does not limit Laci's recovery to $25,000; instead, the "maximum limit of liability" language relied upon by Allstate works only within its respective coverage to limit the amount of liability under that particular coverage. Allstate, citing to *Hanson*, would have us read the limit of liability sections together to mean the limit of liability for each coverage is really the limit of liability for both UM and liability coverages. This, we cannot do. The limit of liability sections appear to be purposefully separated. We are obliged to interpret this unambiguous language as it is written. *Purvis Oil Corp. v. Hillin*, 890 S.W.2d 931, 935 (Tex.App.-El Paso 1994, no writ).

Thus, we find the "maximum limit of liability" language in the Dellasala policy does not reach outside the bounds of each separate coverage to limit other coverages within the policy. We also conclude that no other express provision limits UM coverage once liability limits have been paid to one person for injuries sustained in one accident. We hold the trial court erred in its construction of the Dellasala policy. Accordingly, we sustain the Jankowiaks' first issue.

## PUBLIC POLICY

■ Even if our analysis above is incorrect and the trial court properly construed the Dellasala policy, we find that construction violates public policy.

■ Whether a contract violates public policy is a question of law we review de novo. *Lawrence v. CDB Servs., Inc.*, 44 S.W.3d 544, 555 (Tex.2001), *superceded by statute on other grounds as stat-*

*ed in Storage & Processors, Inc. v. Reyes,* 134 S.W.3d 190, 192 (Tex.2004). Texas expresses its public policy through its statutes. *Tex. Commerce Bank, N.A. v. Grizzle,* 96 S.W.3d 240, 250 (Tex.2002). Therefore, "to determine whether a contract violates public policy, we consider the policies underlying any applicable statutes." *Lawrence,* 44 S.W.3d at 555. The appropriate test when considering whether a contract violates public policy "is whether the tendency of the agreement is injurious to the public good, not whether its application in a particular case results in actual injury." *Hazelwood v. Mandrell Indus. Co., Ltd.,* 596 S.W.2d 204, 206 (Tex. Civ.App.-Houston [1st Dist.] 1980, writ ref'd n.r.e.). Public policy can be a vague and uncertain term, and it is up to the power of the lawmaking body to define. *Grizzle,* 96 S.W.3d at 250 (quoting *Lawrence,* 44 S.W.3d at 553). "[C]ourts are apt to encroach upon the domain of that branch of the government if they characterize a transaction as invalid because it is contrary to public policy, unless the transaction contravenes some positive statute or some well-established rule of law." *Id.* (quoting *Lawrence,* 44 S.W.3d at 553).

 The legislature has mandated a minimum of $20,000 in UM coverage in every state automobile liability insurance policy, unless such coverage has been waived by the insured in writing.[12] Tex. Ins.Code Ann. art. 5.06–1(1); *Kidd,* 997

S.W.2d at 268. UM coverage protects an insured who is "legally entitled to recover damages from owners or operators of uninsured or underinsured motor vehicles because of bodily injury, sickness, or disease, including death, or property damage" resulting from an accident, but who cannot recover from the person responsible for the accident. Tex. Ins.Code Ann. art. 5.06–1(1); *Progressive County Mut. Ins. Co. v. Sink,* 107 S.W.3d 547, 554 (Tex.2003). The purpose of UM coverage is to protect conscientious motorists from financial loss caused by negligent and financially irresponsible motorists. *Stracener v. United Servs. Auto. Ass'n,* 777 S.W.2d 378, 382 (Tex.1989). UM coverage, therefore, is designed to place the injured claimant in a position as though a financially irresponsible motorist had been insured. *Kidd,* 997 S.W.2d at 272. Article 5.06–1 is to be liberally construed to give full effect to this public policy. *Stracener,* 777 S.W.2d at 382. Any insurance contract provision that is inconsistent with or does not further the purpose of article 5.06–1 is invalid. *See id.* at 383–84 (finding intermediate appellate courts' decisions involving article 5.06–1 operated to limit the possibility that an injured insured can recover actual damages and therefore frustrated the purpose of that statute).

 To recover UM benefits, "the insured must be able to show fault on the part of the uninsured motorist and the

12. Texas law also requires automobile insurance policies to contain a minimum of $20,000 in liability coverage that cannot be waived. Tex. Transp. Code Ann. §§ 601.051, 601.072 (Vernon 1999). Allstate argues, without citing to any authority, that it appears the legislature is more concerned that drivers have liability coverage than it is that they have UM coverage because liability coverage cannot be waived, while drivers can waive UM coverage. Allstate's argument is unpersuasive at best. Without attempting to balance the respective importance of each cover-

age, we recognize that the legislature has clearly indicated the importance of both coverages by mandating minimum amounts for each. Liability coverage cannot be waived because the law generally requires drivers to maintain a minimum amount of insurance in order to operate their vehicles. *Sink,* 107 S.W.3d at 553. UM coverage, therefore, is a failsafe that drivers must opt out of, not into, to protect drivers from damages caused by financially irresponsible motorists. *Kidd,* 997 S.W.2d at 272.

extent of the resulting damages...." *Sprague v. State Farm Mut. Auto. Ins. Co.*, 880 S.W.2d 415, 416 (Tex.App.-Houston [14th Dist.] 1993, writ denied) (quoting *Franco v. Allstate Ins. Co.*, 505 S.W.2d 789, 792 (Tex.1974)). Under the Dellasala policy's UM coverage, Allstate:

> will pay damages which a covered person is legally entitled to recover from the owner or operator of an uninsured vehicle because of bodily injury sustained by a covered person ... caused by an accident.

Laci is a "covered person" under this policy because she was an occupant of the Dellasala vehicle at the time of the accident. The extent, if any, of Salas' fault in the accident affects Laci's ability to recover UM damages. Laci's ability to recover also depends upon the extent of her actual damages.

Despite these unresolved fact issues, Allstate contends the trial court properly granted summary judgment because the Dellasala policy prohibits recovery of any UM benefits once the liability coverage maximum for bodily injury is paid to "one person" in "one auto accident." Allstate argues that the number of claims made or vehicles involved in the accident cannot be used to duplicate recovery.

■ In *Mid–Century Insurance Company of Texas v. Kidd*, the jury awarded $13,000 to the plaintiff in actual damages after the insurer had already paid $10,000 in PIP benefits. 997 S.W.2d at 267. The Texas Supreme Court upheld a provision allowing the insurer to offset payment under the UM coverage by the amount already paid under PIP coverage in order to prevent recovery in excess of actual damages.[13] *Id.* at 277. Although the *Kidd* Court stated that offset provisions are generally enforceable, it also held its prior relevant caselaw [14] "stand[s] for the proposition that offsets in the UM section of the policy are ineffective *to the extent* that they prevent recovery of actual damages or reduce UM protection below the minimum limits required by the UM statute." [15] *Id.* at 270 (emphasis added). Thus, UM protection must put the injured party in the same position as if the uninsured driver had insurance coverage. While Allstate has paid Lacy $25,000 as part of *its* liability coverage, it has not paid any part of the UM coverage that Salas' insurance company would have paid to Laci had he been insured. Moreover, Laci's damages are unknown and could greatly exceed amounts already paid by Allstate and other responsible parties. *See Am. Motorists Ins. Co. v. Briggs*, 514 S.W.2d 233, 236 (Tex.1974) (stating liability under more than one insurance policy is joint and sev-

13. The insurance clause in *Kidd* provided that:
> In order to avoid insurance benefits payments in excess of actual damages sustained, subject only to the limits set out in the Declarations ... we will pay all covered damages not paid or payable under any ... Personal Injury Protection Coverage.
> 997 S.W.2d at 267.

14. *Am. Motorists Ins. Co. v. Briggs*, 514 S.W.2d 233 (Tex.1974); *Westchester Fire Ins. Co. v. Tucker*, 512 S.W.2d 679 (Tex.1974); *Am. Liberty Ins. Co. v. Ranzau*, 481 S.W.2d 793 (Tex.1972).

15. The Dellasala policy language supports this outcome by limiting UM coverage to the lesser of (1) actual damages not already paid or payable to the injured by those legally responsible and (2) the "applicable limit of liability for this coverage." Allstate urges that *Kidd* does not control because the interrelationship between PIP benefits and UM benefits is different than that between UM and liability benefits. However, here, just as in *Kidd,* the insurer seeks to offset its UM liability against amounts already paid for the same damages. *Kidd's* discussion of offsets in UM coverage applies to this case.

eral to the extent of plaintiff's actual damages).

An insured, when selecting and paying for coverage, shows an intent to protect against a variety of risks. Liability coverage protects an injured party against the insured driver's negligence, while UM coverage "indemnifies insureds against only those damages proximately caused by the other [uninsured] driver's negligence." *See In re Tex. Ass'n of Sch. Bds., Inc.*, 169 S.W.3d 653, 660 (Tex.2005) (quoting *Kidd*, 997 S.W.2d at 275) (stating UM and PIP coverages are complementary and indemnify insureds against different risks and that such coverage is consideration for the premiums paid). The Dellasala policy reflects this by obligating Allstate to pay liability coverage when "any covered person becomes legally responsible because of an auto accident," and to pay UM coverage when "a covered person is legally entitled to recover from the owner or operator of an uninsured motor vehicle because of bodily injury ... caused by an accident." Allstate's argument that it has exhausted the applicable policy limits by paying $25,000 in liability coverage ignores the result that—although the Dellasalas included UM coverage in their policy and did not waive that coverage in writing as required by statute—Laci Jankowiak, an insured, is allowed to recover only for Daniel Dellasala, Jr.'s legal responsibility for the accident, and not for Salas' negligence in causing the accident. *See Stracener*, 777 S.W.2d at 384 (stating that by purchasing UM coverage along with basic liability coverage "the insured has expressed an intent not only to protect others from his or her own negligence but also to protect that person's own family and guests from the negligence of others"). The Jankowiaks are not seeking recovery in excess of actual damages,

They seek only to recover actual damages incurred.

We consider this issue in terms of whether the Dellasala policy, as read by Allstate and the trial court, contains terms that are injurious to the public good, and in light of Texas public policy favoring the protection of conscientious motorists from financial loss caused by negligent and financially irresponsible motorists. Under this standard, Allstate's argument that any payment of UM coverage to Laci is barred by prior payment of the maximum amount of liability coverage cannot stand. The Texas Supreme Court has made it clear that policy provisions cannot be used to limit statutory financial responsibility mandates or to limit the recovery of actual damages. Therefore, to the extent the Dellasala policy can be properly construed to provide less than the statutory minimum amount of coverage or to limit a covered person's recovery of actual damages, we find such limiting provisions violate public policy and are therefore invalid. We sustain the Jankowiaks' second issue.

The trial court's judgment is reversed and remanded.