**Reversed and Rendered and Majority Opinion and Dissenting Opinion filed May 14, 2024.**



In The

# Fourteenth Court of Appeals

---

## NO. 14-22-00450-CV

---

## PROGRESSIVE COUNTY MUTUAL INSURANCE COMPANY, Appellant

### V.

### ARTEMIZ FREEMAN, Appellee

---

**On Appeal from the 113th District Court
Harris County, Texas
Trial Court Cause No. 2019-25906**

---

## DISSENTING OPINION

Summary judgment was granted to Freeman based on public policy—specifically, that denial of UM/UIM benefits to her based on the regular use exclusion in her insurance contract contravenes Texas public policy.

The majority errs in reversing the trial court's amended final judgment and rendering judgment that Freeman take nothing. By requiring Freeman to prove the amount of worker's compensation benefits she received in order to prevail on her

claims, the majority ignores the parties' agreed damages and erroneously creates a a new element of proof for recovery of UM/UIM benefits. The majority further subverts the purpose of UM/UIM coverage, denies Freeman the protections and guarantees mandated by the Texas Insurance Code, and omits any analysis of Texas public policy regarding UM/UIM coverage. As a result, the majority reaches the wrong conclusion.

## TEXAS PUBLIC POLICY

Although parties as a general rule have the right to contract as they see fit, their agreement must not violate the law or public policy. *In re Prudential Ins. Co. of Am.*, 148 S.W.3d 124, 129 (Tex. 2004) (orig. proceeding). "The Legislature determines public policy through the statutes it passes." *Fairfield Ins. v. Stephens Martin Paving, LP*, 246 S.W.3d 653, 665 (Tex. 2008). "Whether a contract violates public policy is a question of law, which we review de novo." *Van Voris v. Team Chop Shop, LLC*, 402 S.W.3d 915, 922 (Tex. App.—Dallas 2013, no pet.) (citing *Barber v. Colo. I.S.D.*, 901 S.W.2d 447, 450 (Tex. 1995)).

To determine whether an insurance contract is unenforceable on public policy grounds, we must weigh "the interest in enforcing agreements versus the public policy interest against such enforcement." *Fairfield*, 246 S.W.3d at 663. On one side of the scale is Texas's general policy favoring freedom of contract. *Id*. In weighing this interest, we "should consider the reasonable expectations of the parties and the value of certainty in enforcement of contracts generally." *Id*. "On the other side of the scale is the extent to which the agreement frustrates important public policy." *Id*. at 663–64. We consider whether the contract is "injurious to the public good, not whether its application in a particular case results in actual injury." *Jankowiak v. Allstate Prop. & Cas. Ins.*, 201 S.W.3d 200, 210 (Tex. App.—Houston [14th Dist.] 2006, no pet.).

Since 1977 the Texas Legislature has required all insurers to provide both uninsured and underinsured motorist ("UM/UIM") coverage in automobile insurance policies. *See Mid-Century Ins. Co. of Tex. v. Kidd*, 997 S.W.2d 265, 268 (Tex. 1999); *see* Tex. Ins. Code Ann. § 1952.101. The "strong underlying public policy" behind the statute is to protect conscientious motorists from financial loss caused by negligent, financially irresponsible motorists. *Stracener v. United Servs. Auto. Ass'n*, 777 S.W.2d 378, 382 (Tex. 1989). "UM[/UIM] coverage, therefore, is designed to place the injured claimant in a position as though a financially irresponsible motorist had been insured." *Jankowiak*, 201 S.W.3d at 210. We construe the statute liberally to give effect to this public policy. *Old Am. Cnty. Mut. Fire Ins. v. Sanchez*, 149 S.W.3d 111, 115 (Tex. 2004); *Stracener*, 777 S.W.2d at 382; *McDonald v. S. Cnty. Mut. Ins.*, 176 S.W.3d 464, 476 (Tex. App.—Houston [1st Dist.] 2004, no pet.).

The key to determining whether a particular exclusion in an automobile insurance policy is valid or invalid is whether the exclusion would, under the circumstances of the particular case, operate to deprive an insured of the protection required by the Texas UM/UIM statute. *See Briones v. State Farm Mut. Auto. Ins. Co.*, 790 S.W.2d 70, 74 (Tex. App.—San Antonio 1990, writ denied). Part III of Freeman's insurance policy provides $100,007.00 in UM/UIM coverage. The regular use exclusion at "Part III—Uninsured/Underinsured Motorist Coverage" in Progressive's policy reads in relevant part:

> Coverage under this Part III will not apply:
> 1. to bodily injury sustained by any person while using or occupying:
> . . . .
>     d. a motor vehicle that is owned by or available for the regular use of you or a relative. This exclusion does not apply to a covered auto that is insured under this Part III.

Stated differently, Progressive's interpretation of the exclusion limits UM/UIM

3

coverage to situations when an insured is injured while using or occupying an owned-and-insured or occasionally-used motor vehicle.

In contrast, Texas law mandates UM/UIM coverage without such limitation: "(a) In this section, 'uninsured or underinsured motorist coverage' means the provisions of an automobile liability insurance policy that . . . protects insureds who are legally entitled to recover from owners or operators of uninsured or underinsured motor vehicles damages . . . resulting from the ownership, maintenance, *or use of any motor vehicle*." Tex. Ins. Code Ann. § 1952.101 (emphasis supplied). The statute does not consider who owns the vehicle or the frequency with which the insured uses it. Rather, Texas law requires that UM/UIM coverage "follows the person," thus inuring to the benefit of the insured. *See, e.g., Progressive Cnty Mut. Ins. v. Kelley*, 284 S.W.3d 805, 806 (Tex. 2009) (per curiam) (involving UIM claimant who was struck by a car while riding her horse); *cf*. Tex. Ins. Code Ann. § 1952.104(3) (physical contact must have occurred with "person or property of the insured" where identity of uninsured motorist is unknown).

Progressive's denial of coverage because Freeman was occupying an employer-owned vehicle available for her regular use[1] allows Progressive to write a vehicle-based requirement into the policy that is inconsistent with the Texas Legislature's definition of UM/UIM coverage. Notably, insureds can reject UM/UIM coverage by signing a written rejection. Tex. Ins. Code Ann. § 1952.101(c). Further narrow exclusions have developed to prevent (1) any person from recovering both liability and UIM proceeds from the same policy and thus converting the insured's UIM coverage into a second layer of liability insurance;

---

[1] The trial court stated in its judgment that the police sports utility vehicle was available for Freeman's regular use.

4

*see Farmers Tex. Cnty Mut. Ins. v. Griffin*, 868 S.W.2d 861, 868 (Tex. App.— Dallas 1993, writ denied); and (2) family members from recovering UM/UIM benefits after injury in or from a family member's owned-but-uninsured vehicle. *See Verhoev v. Progressive Cnty Mut. Ins.*, 300 S.W.3d 803, 808–09 (Tex. App.— Fort Worth 2009, no pet.).[2] These two exceptions are the basis of Progressive's regular use exclusion,[3] but neither of these concerns exist in the present case. Because the regular use exclusion, when interpreted to apply to employer-owned vehicles, conflicts with the unambiguous language of the Texas Insurance Code, it is invalid and unenforceable.

Progressive nonetheless argues that allowing Freeman to collect UM/UIM benefits exposes an insurer to increased contractual risk "to insure vehicles for which the insured did not pay insured premiums." This argument is not compelling. The summary judgment evidence is devoid of any proof for this proposition. Insurers use data to create policy language, clear legal or regulatory hurdles, and to determine premium pricing.[4] In motions for summary judgment,

---

[2] The majority quotes *Bergensen v. Hartford* for the broad proposition that UM/UIM coverage "need not afford protection in every situation." *Bergensen v. Hartford Ins.*, 845 S.W.2d 374, 377 (Tex. App.—Houston [1st Dist.] 1993, writ ref'd). However, *Bergensen* involved a narrow exception to UIM coverage, a claimant trying to collect both liability and UIM benefits from the same policy. *Id.* Further, the majority omits the context of its quote from *Bergensen*. In context, *Bergensen* refers to the authority granted by the Legislature to the state board of insurance to define "uninsured vehicle." *Id.* It is thus the Legislature that is empowered to alter the "strong public policy" underlying the UM/UIM statutes. *See Stracener*, 777 S.W.2d 382; *see also* Tex. Ins. Code Ann. § 1952.102(b).

[3] *See* Gregory R. Ave, *Recent Developments Regarding the Texas Auto Policy*, 1 J. Tex. Ins. L. 27, 40 (1999) (The regular use exclusion "has as its intended purpose" the prevention of double recovery of policy limits under both the insurance policy's liability and UM/UIM coverages).

[4] *See* Michelle Boardman, *Risk Data in Insurance Interpretation*, 16 Conn. Ins. L.J. 157, 164 (2009) (discussing actuarial data and underwriting in evaluating a particular risk, a particular policyholder, and a premium). "Given the centrality of the data in the drafting, pricing, and legitimizing of insurance policies, it is peculiar that courts, insurers, and policyholders tend to ignore it when the time comes to interpret and apply a policy in court." *Id*. at 157.

factual assertions must be supported by evidence, *see Quanaim v. Frasco Rest. & Catering*, 17 S.W.3d 30, 42 (Tex. App.—Houston [14th Dist.] 2000, pet. denied), but Progressive has provided no evidence that allowing Freeman to collect will expose Progressive to increased contractual risk.

Insurers have met with varying success from state to state in asserting this type of argument. In considering the public policy underlying UM/UIM statutes, some jurisdictions have decided that when an insured is driving an employer's vehicle, the regular use exclusion violates public policy. *See Higgins v. La. Farm Bureau Cas. Ins.*, 315 So.3d 838, 846–47 (La. 2021); *Rush v. Erie Ins. Exch.*, 265 A.3d 794, 797 (Pa. Super. Ct. 2021) (concluding that police officer injured in his police care could recover UM/UIM benefits under his personal policy; regular use exclusion conflicts with state's coverage mandate); *Gibbs v. Nat'l Gen. Ins.*, 938 S.W.2d 600, 607 (Mo. Ct. App. 1997) (concluding police officer injured in his patrol vehicle could recover UIM under personal policy); *contra Sposito v. Krzynowek*, 2014-Ohio-1151, 2014 WL 1347992, at *5 (Ohio Ct. App. 2014); *Shepherd v. Fregozo*, 175 S.W.3d 209, 226 (Tenn. App. 2005); *Drollinger v. Safeco Ins. Co. of Am.*, 797 P.2d 540, 542-43 (Wash. App. 1990).

The Texas Supreme Court has never permitted an erosion of the UM/UIM statute to categorically preclude protection of an insured while using or occupying an employer's vehicle. To the contrary, precedent requires the Texas UM/UIM statute to be liberally construed. *Stracener*, 777 S.W.2d at 382. "'When the Legislature specifies a particular extent of insurance coverage any attempt to void or narrow such coverage is improper and ineffective.'" *Nat'l Cnty. Mut. Fire Ins. v. Johnson*, 879 S.W.2d 1, 3 (Tex. 1993) (plurality opinion) (quoting *Unigard Security Ins. v. Schaefer*, 572 S.W.2d 303, 307 (Tex.1978)).

Under Progressive's view, insureds may be denied UM/UIM coverage when

in a vehicle they are *required* to use or occupy in order to maintain employment. Additionally, Progressive's interpretation of its regular use exclusion is applicable to third-party vehicles that insureds typically use or occupy on a regular basis in everyday life: school buses, carpools, taxis, ride shares, shuttle vans, hired vehicles (such as airport town cars), and friends' cars. Here, the exception swallows the rule. Denying Freeman, and insureds in a like position, UM/UIM coverage results in the repudiation of the purpose of UM/UIM insurance: to protect innocent insureds from financial loss caused by negligent, financially irresponsible motorists. *See Stracener*, 777 S.W.2d at 382.

Freeman paid a premium for UM/UIM coverage with the reasonable expectation that coverage applied if she was injured in an accident with an uninsured or underinsured driver. Various Texas courts have concluded we must decide on a case-by-case basis whether exclusion of UM/UIM benefits frustrates the mandate of the UM/UIM statute. *Briones*, 790 S.W.2d at 74; *accord Progressive Cnty Mut. Ins. v. Caltzonsing*, 658 S.W.3d 384, 401 (Tex. App.—Corpus Christi-Edinburg 2022, no pet.) (addressing self-insurer exclusion to UM/UIM coverage); *Fontanez v. Tex. Farm Bureau Ins.*, 840 S.W.2d 647, 649–50 (Tex. App.—Tyler 1992, no writ) (addressing exclusion of UM/UIM coverage for any vehicle "owned by or furnished or available for the regular use by any family member"); *see also Huttleson v. Beacon Nat'l Ins.*, 822 S.W.2d 741, 745 (Tex. App.—Fort Worth 1992, writ denied) (in applying case-by-case analysis, concluding that "consent to settle" exclusion did not violate UM/UIM statute). When Texas courts cannot agree about the application of the term "regular use," our expectation that the general public will be able to understand what our jurisprudence cannot define is misplaced. Thus, I would conclude that the regular use exclusion is void in this case because it conflicts with the UM/UIM statute and

7

the public policy underlying the statute.

## WORKERS' COMPENSATION IS INAPPLICABLE

The majority opines that "Freeman failed to show how much she received in workers' compensation benefits and to show that she has suffered financial loss" and concludes Freeman has failed to meet her summary judgment burden. This conclusion inexplicably disregards the agreed damages awarded by the trial court and fails entirely to address the public policy grounds on which the trial court granted summary judgment.

The parties filed a joint motion for agreed judgment after agreeing to damages in a Rule 11 agreement. The agreed judgment and the parties' Rule 11 agreement state that (1) Freeman "sustained damages in the amount of $120,000.00;" (2) the insurer for the underinsured driver "tendered its policy limits of $50,000.00"; and (3) the underinsured driver's policy "was not enough to pay the full amount that [Freeman] was legally entitled to receive as damages." This agreement and the judgment thus clearly show Freeman's financial loss exceeded the underlying liability policy, making the driver who hit her an underinsured driver. It is thus undisputed that $50,000.00 from the tortfeasor's liability insurance was insufficient to compensate Freeman for her $120,000.00 in damages.

Further, nowhere in parties' pleadings or appellate briefing does either party argue that the amount of Freeman's worker's compensation benefits is an element of damages she must prove before she receives UM/UIM coverage from her policy. Rather, the parties and the trial court considered the validity of the regular use exclusion to be the dispositive issue for summary judgment.[5] But for the

---

[5] For instance, the trial court entered an agreed scheduling order setting a summary judgment deadline "regarding the threshold issue of the validity of the 'Regular Use Exclusion'" and contemplating a later "Docket Control Order contingent upon the Court's ruling on the above Motions." The parties filed a joint motion for continuance eight months later noting they

regular use exclusion, Progressive agreed to pay Freeman $70,000.00 plus pre-judgment interest. The parties' motions for summary judgment and their stipulations have properly raised the public policy issue; the amount of worker's compensation benefits is irrelevant. *See In re USAA Gen. Indem. Co.*, 624 S.W.3d 782, 788 (Tex. 2021) (orig. proceeding) ("If the liable motorist's insurance coverage is insufficient to compensate the insured for those damages, the contractual duty to pay UIM benefits arises."). The majority thus imposes an erroneous and inapplicable burden of proof on Freeman. *See Greene v. Farmers Ins. Exchange*, 446 S.W.3d 761, 765 n.4 (Tex. 2014) (concluding that we do not consider issues that were not raised in the courts below); *Condon v. Kadakia*, 661 S.W.3d 443, 458 (Tex. App.—Houston [14th Dist.] 2023, pet. denied) (noting that in civil cases, we have no discretion to consider an issue not raised in appellant's brief); *see also Hassell Constr. Co. v. Springwood Realty Co.*, No. 01-17-00822-CV, 2023 WL 2377488, at *24 n.34 (Tex. App.—Houston [1st Dist.] Mar. 7, 2023, pet. denied) (mem. op.) (concluding that issue challenging a summary judgment is waived if not raised in appellants' opening brief).

The implication of the majority opinion is that recoveries are "stacked," such that Freeman could receive $50,000.00 from the liability insurance carrier plus additional amounts in workers' compensation benefits to compensate her for her damages.[6] However, the worker's compensation carrier has a statutory right of reimbursement.[7] *See* Tex. Lab. Code Ann. § 417.002. "[T]he compensation carrier

---

had discontinued discovery pending the trial court's ruling on the "coverage issue addressed in the dispositive motions."

[6] "Stacking" occurs when multiple insurance coverages are aggregated to cover an insured's loss. *Upshaw v. Trinity Cos.*, 842 S.W.2d 631, 632 n. 1 (Tex. 1992). Interpolicy stacking is the cumulation of coverages under more than one insurance policy. *Id.*

[7] The workers' compensation carrier has statutory rights to reimbursement and subrogation. Tex. Labor Code Ann. §§ 417.001–.002. The right to reimbursement refers to the

gets the first money a worker receives from a tortfeasor." *Texas Mut. Ins. v. Ledbetter*, 251 S.W.3d 31, 35 (Tex. 2008). Until a workers' compensation carrier is reimbursed in full, the injured employee has no right to any of the liability insurance proceeds recovered from the tortfeasor. *Id*. at 36. "There is nothing discretionary about this statute; a carrier's right to reimbursement is mandatory." *Id*.; *c.f., e.g., City of Corpus Christi v. Gomez*, 141 S.W.3d 767, 769 (Tex. App.— Corpus Christi–Edinburg 2004, no pet.) (addressing employer's recovery of policy limits from insurer of an underinsured driver who struck and injured employee). Thus, the possibility of recovering workers' compensation benefits does not alter the underinsured nature of Freeman's, or similarly situated persons', claims.[8]

Moreover, workers' compensation benefits are not intended to make an injured party whole. They are designed to provide medical benefits, often within an HMO-like framework, *see* Tex. Labor Code Ann. §§ 408.021, 408.31, and income benefits to replace *a portion of* lost wages. *See id.* §§ 408.081, 408.103, 408.126, 408.144. But damages for personal injuries may include other economic damages, such as past, present, and future income, loss of earning capacity, and health care expenses; noneconomic damages, such as physical pain and suffering, mental and emotional pain or anguish, loss of consortium, disfigurement, physical impairment, loss of companionship and society, inconvenience, and loss of enjoyment of life; and exemplary damages. *See* Tex. Civ. Prac. & Rem. Code Ann. § 41.001; *Golden Eagle Archery, Inc. v. Jackson*, 116 S.W.3d 757, 763 (Tex. 2003); *see also*

---

statutory mandate that the net amount recovered by an injured employee in a third-party action shall be used to reimburse the workers' compensation carrier for benefits it has paid, while subrogation refers to the workers' compensation carrier's ability to step into the injured employee's shoes to enforce the third party's liability up to the total benefits the carrier paid or assumed. *ExxonMobil Corp. v. Ins. Co. of State of Pa.*, 568 S.W.3d 650, 655 (Tex. 2019).

[8] *Cf. Am. Liberty Ins. v. Ranzau*, 481 S.W.2d 793, 797 (Tex. 1972) (striking down an "other insurance" clause that prevented insured from seeking UIM benefits when other insurance was available).

*Gregory v. Chohan*, 670 S.W.3d 546, 551 (Tex. 2023) (plurality op.) ("Mental anguish and loss of companionship damages are neither punitive nor exemplary. They are compensatory.").[9] For these reasons, I disagree that availability of workers' compensation insurance alters the underinsured nature of Freeman's claims.

For the foregoing reasons, the trial court's judgment should be affirmed.

/s/     Margaret "Meg" Poissant
        Justice

Panel consists of Justices Bourliot, Hassan, and Poissant. (Hassan, J., majority).

---

[9] These types of damages are also recognized in Freeman's Progressive policy, including bodily injury, emotional injury or mental anguish, loss of society, loss of companionship, loss of services, and loss of consortium.