Jerry C. JOHNSON and Jacob Johnson, Cross–Appellants,

State Farm Fire and Casualty Company and State Farm Mutual Automobile Insurance Company, Appellants

v.

STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY and State Farm Fire and Casualty Company, Cross–Appellees,

Jerry C. Johnson and Jacob Johnson, Appellees

NO. 03–16–00086–CV

Court of Appeals of Texas, Austin.

Filed: April 6, 2017

Melinda Elder, Elliot Clark, Linda J. Burgess, Winstead PC, Austin, TX, for Appellees.

Randy G. Allen, Colorado Springs, CO, Margaret A. Poissant, Poissant Law Firm, Houston, TX, for Appellants.

Before Chief Justice Rose, Justices Goodwin and Bourland

## OPINION

Melissa Goodwin, Justice

This appeal arises from a suit brought by Jerry C. Johnson seeking declarations construing the terms of two insurance policies following an automobile accident in which Jerry's son, Jacob, a minor at the time, was injured while Jerry was driving.[1] *See* Tex. Civ. Prac. & Rem. Code §§ 37.001–.011. Jerry sued State Farm Mutual Automobile Insurance Company, which had issued Jerry an auto policy, and State Farm Fire and Casualty Company, which had issued Jerry an umbrella policy (jointly State Farm). Jerry also named Jacob as a defendant, as a party with a claim or interest that would be affected by the litigation.[2] Jacob admitted Jerry's claims and asserted a cross-claim for declaratory relief against State Farm. State Farm asserted counterclaims for declaratory relief against Jerry and Jacob. All parties filed motions for summary judgment. The trial court granted in part and denied in part the motions of Jerry and State Farm and denied Jacob's motion. All parties appeal the rulings adverse to them. For the reasons that follow we affirm in part and reverse and render in part the trial court's judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

In 2008, Jerry, Stephanie, and Jacob were traveling on Interstate 70 in Colorado in a rented car driven by Jerry. Jerry became confused about which exit to take and turned into the path of a semi-truck, resulting in a collision. Jacob, who was eleven years old at the time and asleep in the back seat, suffered serious bodily injuries, including severe traumatic brain injury. Jacob lived with his parents at the time of the accident and remained in the home until May 29, 2015, when he permanently moved out of the residence. At the time of the accident, Jerry was insured by a Texas Personal Auto Policy (the auto policy) and a Personal Liability Umbrella Policy (the umbrella policy), both issued by State Farm. The auto policy contains a provision, the "family member exclusion," that ex-

---

1. For clarity, we refer to Jerry and Jacob Johnson by their first names.

2. Jerry sued Jacob by and through Stephanie Johnson, Jerry's wife and Jacob's mother, as Jacob's next friend.

cludes from liability coverage bodily injury to "any *family member*, except to the extent of the minimum limits of Liability Coverage required by Texas [Revised] Civil Statutes, Article 6701h, entitled 'Texas Motor Vehicle Safety–Responsibility Act,'" which at the time was $25,000.[3] *See* Act of May 15, 2007, 80th Leg., R.S., ch. 1298, § 1, sec. 601.072(a)(1), Tex. Gen. Laws 4365, 4365 (expired Dec. 31, 2010).[4] "Family member" is defined as "a person who is a resident of your household and related to you by blood, marriage, or adoption." The umbrella policy contains a similar provision, also referred to as a "family member exclusion," that excludes coverage for "**bodily injury** ... to any **insured**," defined as "**you** and **your relatives** whose primary residence is **your** household."[5] "Relative" is defined as "any person related to **you** by blood, adoption, or marriage." Jerry sought coverage for Jacob's injuries under both policies. State Farm contended that the family member exclusions in the policies excluded coverage except to the extent of the minimum limits of liability coverage required under the auto policy by the Texas Motor Vehicle Safety Responsibility Act and offered to pay $25,000. *See id.*

Jacob also made a claim for payment under the auto policy's underinsured motorist (UIM) coverage.[6] The UIM provision affords coverage for bodily injury that a "*covered person* is legally entitled to recover from the owner or operator of an uninsured motor vehicle." "Covered person" as defined includes "[y]ou or any **family member**." "Uninsured motor vehicle" is defined to include an underinsured motor vehicle, which is further defined, in relevant part, as "one to which a liability bond or policy applies at the time of the accident but its limit of liability ... is not enough to pay the full amount the covered person is legally entitled to recover as damages ...." The UIM provision excludes from the definition of "uninsured motor vehicle" any vehicle "[o]wned by or furnished or available for the regular use of you or any **family member**." State Farm contended that UIM coverage is not available for damages sustained by a passenger who has already recovered the full amount of liability limits under the same policy and denied Jacob's claim.

Jerry filed suit seeking declarations that the family member exclusions in the policies are unconstitutional and/or contrary to public policy and invalid. In the alternative, he sought a declaration that to the extent the family exclusions are valid, they apply only so long a Jacob is a member of Jerry's household. State Farm filed a counterclaim seeking declarations that the family member exclusions are valid and enforceable to exclude coverage under the auto and umbrella policies for any amount

---

3. The family member exclusion at issue is contained in standard form Endorsement 593E, issued after the policy was issued. The original policy provision entirely excluded from liability coverage bodily injury to any family member.

4. The current minimum amount of motor vehicle liability insurance coverage required to establish financial responsibility for bodily injury is $30,000. *See* Act of May 15, 2007, 80th Leg., R.S., ch. 1298, § 1, sec. 601.072(a–1)(1), Tex. Gen. Laws 4365, 4365 (codified at Tex. Transp. Code § 601.072(a–1)(1)).

5. Jerry disputes that this provision is a "family member exclusion" and contends that it is a health care exclusion instead. As discussed below in our discussion of State Farm's cross-appeal, we do not find this argument persuasive.

6. As discussed below, UIM coverage is contained in the provision for uninsured/underinsured motorist (UM/UIM) coverage. Because only UIM coverage is at issue here, we refer only to UIM coverage. The umbrella policy does not contain a UM/UIM provision.

over the statutory minimum of $25,000 and that the application of the family member exclusions occurs at the time of the accident. Jacob filed a cross-claim against State Farm seeking a declaration that he is entitled to UIM benefits.[7]

All parties filed motions for summary judgment. The trial court granted in part and denied in part the motions of Jerry and State Farm and denied Jacob's motion. The trial court entered a final judgment ordering that the family member exclusion in the auto policy is valid and enforceable, that the application of the family member exclusion in the auto policy occurs at the time of the accident, that coverage for Jacob's bodily injuries under the auto policy is limited to the statutory minimum, and that Jacob is not covered under the auto policy's UIM coverage. The court further ordered that the umbrella policy is valid and enforceable, that the application of the definition of "insured" in the umbrella policy occurs at the time a liability claim is made, that at the time the claim was made Jacob's primary residence was not in Jerry's household, that Jacob was not an "insured" under the umbrella policy at the time the claim was made, and that the umbrella policy does not exclude coverage for liability arising from Jacob's injuries.

State Farm filed a motion for new trial, arguing that the trial court erred in deter-mining that the application of the defini-tion of "insured" in the umbrella policy occurs at the time a liability claim is made rather than at the time of the accident. In the alternative, State Farm argued that, even if the definition of "insured" is ap-plied at the time the claim is made, Jacob was still a resident of Jerry's household when the claim was made.[8] Following a hearing, the trial court issued an order on State Farm's motion for new trial, an amended final judgment, and findings of fact and conclusions of law. In its amended final judgment, the trial court added to its determinations regarding the auto policy determinations that it excludes liability coverage for bodily injury to a family member, that Jacob was a family member whose bodily injuries are excluded from coverage, that the "retained limit"[9] for the auto policy is the statutory minimum of $25,000, and that Jacob's damages are not covered under the UIM provision because UIM benefits are not available for dam-ages of a passenger who has already re-covered the full amount of the liability limits under the same policy.

The court modified its determinations concerning the umbrella policy, ordering that the application of the definition of "insured" occurs at the time the insured becomes "legally liable" for damages that exceed the "retained policy limit," that Jerry is legally liable for Jacob's damages that exceed $25,000,[10] that Jacob was not a

---

7. Jacob initially sought additional declara-tions but ultimately abandoned all but that relating to UIM coverage.

8. In their joint response to State Farm's mo-tion for new trial, Jerry and Jacob admitted that "Jacob made a claim before he moved from his parents' home." In addition, the summary judgment evidence includes affida-vit testimony that Jacob moved out of the family home after suit was filed, and in his briefing, Jerry states that "Jacob was an 'in-sured' when Jerry filed his petition" and that

"Jacob made a liability claim before he moved from the home."

9. "Retained limit" is defined in the umbrella policy, in relevant part, as the sum of "the amount paid or payable by any other insur-ance policy for the **loss**" and "the amount the **insured** is required to pay for the **loss** as provided in the MAINTAINING REQUIRED UNDERLYING INSURANCE section of this policy . . . ."

10. In its conclusion of law No. 19, the trial court found that Jerry became legally liable

resident of Jerry's household or an "insured" at the time Jerry became legally liable, that Jerry is entitled to coverage under the umbrella policy for Jacob's damages that exceed $25,000, and that State Farm is obligated under the umbrella policy to pay damages that arise from the accident and exceed $25,000 up to the policy limit. This appeal and cross-appeal followed.

## STANDARD OF REVIEW AND APPLICABLE LAW

We review a trial court's summary judgment de novo. *Travelers Ins. Co. v. Joachim*, 315 S.W.3d 860, 862 (Tex. 2010). To prevail on a traditional summary judgment motion, the movant must demonstrate that there are no genuine issues of material fact and that it is entitled to judgment as a matter of law. Tex. R. Civ. P. 166a(c); *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215–16 (Tex. 2003). When the movant satisfies this initial summary judgment burden, the burden shifts to the nonmovant to produce evidence raising an issue of fact. *See* Tex. R. Civ. P. 166a(c); *Amedisys, Inc. v. Kingwood Home Health Care, LLC*, 437 S.W.3d 507, 517 (Tex. 2014). When all parties move for summary judgment, each party bears the burden of establishing that it is entitled to judgment as a matter of law. *City of Garland v. Dallas Morning News*, 22 S.W.3d 351, 356 (Tex. 2000); *Abbott v. Dallas Area Rapid Transit*, 410 S.W.3d 876, 879 (Tex. App.–Austin 2013, no pet.). When the parties move for summary judgment on the same issues and the trial court grants one motion and denies the other, we consider the summary judgment evidence presented by all sides, determine all questions presented, and if we determine that the trial

court erred, render the judgment the trial court should have rendered. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005) (citing *FM Props. Operating Co. v. City of Austin*, 22 S.W.3d 868, 872 (Tex. 2000)).

The parties' issues require us to interpret Jerry's insurance policies. "When interpreting an insurance contract we consider all its parts, read all of them together, and give effect to all of them." *Greene v. Farmers Ins. Exch.*, 446 S.W.3d 761, 766 (Tex. 2014). Ordinarily we seek to ascertain the intent of the parties as expressed in the language of a contract, but where, as here, the policy is a standard form prescribed by the Board of Insurance, "the intent of the parties is not what counts because they did not write the contract." *Id.* Instead, we interpret the policy language according to the ordinary, everyday meaning of its words. *Id.*; *see Lamar Homes, Inc. v. Mid-Continent Cas. Co.*, 242 S.W.3d 1, 8 (Tex. 2007) ("Terms that are not defined in a policy are given their generally accepted or commonly understood meaning."). When a policy permits only one interpretation, we will construe it as a matter of law and enforce it as written. *Charida v. Allstate Indem. Co.*, 259 S.W.3d 870, 873 (Tex. App.–Houston [1st Dist.] 2008, no pet.). We construe the policy against the insurer and in favor of the insured only when policy terms are ambiguous. *Id.*

## DISCUSSION

In his appeal, Jerry challenges the trial court's determinations that the family exclusion in the auto policy is valid and enforceable and that its application occurs at the time of the accident. Jacob, in his

for Jacob's damages that exceed $25,000 on January 29, 2016, the date of the original final

judgment.

appeal, incorporates Jerry's arguments and also challenges the trial court's determination that he is not entitled to UIM coverage under the auto policy. In its cross-appeal, State Farm challenges the trial court's determination that Jacob's status as an "insured" under the umbrella policy is determined at the time of the judgment, rather than at the time of the accident. State Farm also argues that the trial court erred in determining that State Farm is liable for damages that exceed $25,000 up to the policy limits and challenges certain findings of fact and conclusions of law. We address each party's appeal in turn.

### Jerry's Appeal—Family Member Exclusion Under the Auto Policy

In issues one through five and seven, Jerry challenges the family member exclusion in the auto policy as against public policy, unconstitutional, unconscionable, and void. In his sixth issue, Jerry challenges the trial court's determination that the family exclusion applies at the time of the accident. We address these issues in turn.

#### Public Policy

[1] In his first issue, Jerry argues that the family exclusion violates public policy in two ways—by acting as a barrier to Texans' freedom to contract and by discouraging family unity. His arguments are premised on statutory provisions governing insurance policy forms. Section 5.06 of the Insurance Code provides that the Board of Insurance shall adopt a policy

form and endorsements for each type of motor vehicle insurance. See Tex. Ins. Code § 5.06(1). The standard auto policy adopted by the Board of Insurance contains the family member exclusion at issue that excludes from liability coverage bodily injury to "any *family member*," except to the extent of the statutory minimum limits. Section 5.06 further provides that the Board may approve the use of other policy forms if they (1) are "adopted by a national organization of insurance companies, or similar organization" and (2) provide "coverage equivalent to the coverage provided by the form adopted by the Board." *Id.* § 5.06(3). Jerry contends that requirement that a non-form policy be "equivalent" means it must contain a comparable family member exclusion, that no national organization of insurance companies or similar organization has promulgated a policy without a family member exclusion, and that no insurance company licensed in the State of Texas offers an auto policy without a family member exclusion.[11] The result, Jerry argues, is that it is impossible for motorists to protect themselves from ruinous liability to family members and that state law thus creates a barrier to Texans' freedom of contract, contrary to Texas's strong public policy in favor of freedom to contract. See *Philadelphia Indem. Ins. Co. v. White*, 490 S.W.3d 468, 471 (Tex. 2016) (noting that Texas's strong public policy favoring freedom of contract is "firmly embedded in our jurisprudence").

---

11. Jerry offered as evidence an affidavit from an insurance attorney, with exhibits, outlining the results of research the attorney conducted concerning unavailability in Texas of an auto policy without a family member exclusion. State Farm's attorney agreed that no "admitted" policy omits the family member exclusion although she was unsure whether such a policy is available through a surplus lines company. Surplus lines insurance is an excep-

tion to the general statutory restriction on unauthorized insurers created for consumers who have difficulty obtaining coverage. A surplus lines insurer is not authorized to issue polices in Texas but may become eligible to "place" surplus lines polices through a licensed surplus lines agent, provided the insurer complies with strict capitalization and registration requirements. See generally Tex. Ins. Code §§ 981.001–.222.

In his second argument, Jerry argues that because Texas insurance law effectively requires Texans to purchase auto policies containing family member exclusions, it discourages family unity. He contends that the only way a motorist can protect himself from liability like that Jerry faces is to stay single or refrain from driving with his children in the car. He also compares the results of applying the family member exclusion when families remain intact and both parents are subject to liability to their children with the results of applying the exclusion when parents divorce and the custodial parent remains subject to liability while the noncustodial does not. Jerry also cites provisions in the Family Code stating Texas public policy of ensuring frequent and continuing contact between parents and children, providing a safe and stable environment for children, and encouraging shared rights and duties of raising children by divorced parents. *See* Tex. Fam. Code §§ 153.001, .251.

While we appreciate Jerry's arguments, we are bound by case law suggesting otherwise. In *National County Mutual Fire Insurance Company v. Johnson*, 879 S.W.2d 1 (Tex. 1993), the Texas Supreme Court, in a plurality opinion, upheld the family member exclusion in auto policies so long as the insurer provides the minimum statutory limits required by state law. *Id.* at 5–6 (Cornyn, J. concurring and dissenting). Four members of the court concluded that a family member exclusion that did not provide the minimum statutory limits was not "consistent with the legislative purpose of ensuring that every motor vehicle is covered by an automobile liability policy that will protect all claimants against losses which arise out of the operation of the vehicle." *Id.* at 2. In his concurring and dissenting opinion, Justice Cornyn agreed that the family member exclusion conflicted with state law, but only to the extent that it failed to provide coverage in the minimum amount of insurance required by the Texas Motor Vehicle Safety Responsibility Act. *Id.* at 6 (Cornyn, J., concurring and dissenting). Less than a year after the *Johnson* decision, the Supreme Court unanimously held that "the family member exclusion is invalid only to the extent it conflicts with the Texas [Motor Vehicle] Safety Responsibility Act . . . that is, to the statutorily-imposed minimum limit of automobile liability insurance imposed by the Act." *See Liberty Mut. Fire Ins. Co. v. Sanford*, 879 S.W.2d 9, 10 (Tex. 1994) (per curiam) (adopting reasoning of plurality opinion in *Johnson* ). As this Court has observed,

> The plurality of the *Johnson* Court held that [family member] exclusions contravene the Texas Motor Vehicle Safety-Responsibility Act and are thus void for public policy reasons, as well as violations of statutory requirement of minimum liability insurance. *See Johnson*, 879 S.W.2d at 2. However, Justice Cornyn's concurring and dissenting opinion, which formed the plurality, stated that such exclusions are void *only* because they conflict with Texas' compulsory liability insurance statute. Therefore, Justice Cornyn stated that such exclusions should be invalid *only* up to the minimum amount of mandated liability insurance. *See id.* at 6 (Cornyn, J., concurring and dissenting). (emphasis added). The Supreme Court adopted Justice Cornyn's position as that of the Court in the per curiam opinion in *Liberty Mutual Fire Insurance Company v. Sanford*, 879 S.W.2d 9, 10 (Tex. 1994).

*Texas Farmers Ins. Co. v. Miller*, No. 03-97-00233-CV, 1997 WL 746027, at *1 n.2, 1997 Tex. App. LEXIS 6210, at *4 n.2 (Tex. App.–Austin Dec. 4, 1997, pet. denied) (not designated for publication).

Since *Sanford*, Texas courts of appeals have recognized family member exclusions

as valid and enforceable. *See, e.g., Charida,* 259 S.W.3d at 876 (stating that "[u]nder *Sanford/Johnson,* the insurer is obligated to pay insured family members the statutorily imposed minimum limit of liability insurance"); *Armendariz v. Progressive Cty. Mut. Ins. Co.,* 112 S.W.3d 736, 739 n.2 (Tex. App.–Houston [14th Dist.] 2003, no pet.) (stating that "as the 'swing vote,' Justice Cornyn's opinion determined the scope of the plurality's judgment" in *Johnson* and that "[t]he family member exclusion is invalid 'to the statutorily-imposed minimum limit of automobile liability insurance imposed by the [Texas Motor Vehicle Safety Responsibility] Act.'" (quoting *Johnson,* 879 S.W.2d at 5 n.1)); *Hanson v. Republic Ins. Co.,* 5 S.W.3d 324, 329 (Tex. App.–Houston [1st Dist.] 1999, pet. denied) (stating that "[u]nder the *Sanford* and *Johnson* precedents, the family-member exclusion limits [the insurer's] duty to indemnify [the policyholder] to the $20,000 minimum mandated by [the Texas Motor Vehicle Safety Responsibility Act]" and holding that "the trial court properly granted summary judgment in [the insurer's] favor on the grounds it had no duty to indemnify [the policyholder] beyond [the statutory minimum] under the liability coverage of the policy"); *State Farm Mut. Auto. Ins. Co. v. Nguyen,* 920 S.W.2d 409, 410–11, 413 (Tex. App.–Houston [1st Dist.] 1996, no writ) (same); *Farmers Tex. Cty. Mut. Ins. Co. v. Griffin,* 868 S.W.2d 861, 867 n.4 (Tex. App.–Dallas 1993, writ denied) ("Justice Cornyn's concurrence and dissent [in *Johnson*] determined the scope of the supreme court's judgment: The family member exclusion is invalid only to the extent it conflicts with the Texas Safety Responsibility Act, that is, to the statu-

torily imposed minimum limit of automobile liability insurance imposed by the Act.") (citation omitted).

The Texas Supreme Court has determined that Texas public policy as reflected in the Texas Motor Vehicle Safety Responsibility Act does not require more than the statutory minimum limits of liability regardless of whether the negligent driver injures a stranger or a family member. *See Sanford,* 879 S.W.2d at 10 (adopting Justice Cornyn's concurring and dissenting opinion, which formed the plurality in *Johnson* ); *Johnson,* 879 S.W.2d at 6 (Cornyn, J., concurring and dissenting) ("The legislature has not said that family members should receive greater coverage than other members of the public . . . . It is not for this court to evaluate the public policy implications of mandatory insurance coverage; the legislature has already done that."). Jerry's complaints concerning the unavailability of policies that do not contain the family member exclusion lie with the legislature and the Texas Board of Insurance, not with State Farm.[12] *See Fairfield Ins. Co. v. Stephens Martin Paving, LP,* 246 S.W.3d 653, 665 (Tex. 2008) ("The Legislature determines public policy through the statutes it passes."); *Castillo v. Canales,* 141 Tex. 479, 174 S.W.2d 251, 253 (1943) ("The Legislature has the power to declare what shall be the policy of the State with reference to insurance matters."). We overrule Jerry's first issue.

### Constitutionality

 In his second, third, and fourth issues, Jerry challenges the family member exclusion on constitutional grounds. In his second issue, he complains that the exclusion violates article I, section 3 of the

---

**12.** In fact, we observe that in his motion for summary judgment, Jerry asserted an "ultra vires" claim in which he asserted that the Texas Board of Insurance exceeded its authority in prohibiting Texas citizens from purchasing insurance policies without a family member exclusion. He did not, however, join the Board of Insurance or its commissioner as a party defendant.

Texas Constitution, the equal protection clause. *See* Tex. Const. art. I, § 3. In his third issue, Jerry argues that the exclusion deprives motorists of due process. *See id.* art. I, § 19. However, equal protection and due process challenges require state action and must be brought against state actors. *See Davis v. Fisk Elec. Co.*, 268 S.W.3d 508, 530 (Tex. 2008) ("The Equal Protection Clause protects citizens from arbitrary and capricious *state action*.") (emphasis added); *Republican Party of Tex. v. Dietz*, 940 S.W.2d 86, 91, 93 (Tex. 1997) (holding that state action is required before litigant can maintain claim under article I of Texas Constitution and that suit could not be maintained against defendant that was not state actor); *Yazdchi v. Tradestar Invs., Inc.*, 217 S.W.3d 517, 520 n.9 (Tex. App.–Houston [14th Dist.] 2006, no pet.) (rejecting due process argument where plaintiff failed to show how defendant's conduct constituted state action as required under article I, section 19 of Texas Constitution). Jerry does not assert that State Farm is a state actor, and on these facts, we conclude that it is not. A private party's actions should not be construed as state action simply because the private party is licensed by the state. *Campos v. South Tex. Beverage Co.*, 679 S.W.2d 739, 740 (Tex. App.–El Paso, no writ 1984). In selling insurance policies to consumers in the state-promulgated form in accordance with state law, State Farm was not "so substantially involved with state ... activity, that its actions should be treated as those of a public entity for the purposes of constitutional adjudication." *See Jones v. Memorial Hosp. Sys.*, 746 S.W.2d 891, 895 (Tex. App.–Houston [1st Dist.] 1988, no writ); *accord Dietz*, 940 S.W.2d at 91–93 (applying rule that state action is present for otherwise private conduct only when challenged conduct can be fairly attributed to government, stating that ultimate determination of whether facts are sufficient to constitute state action is question of law, and concluding that Republican Party was not state actor when it denied plaintiff convention booth and program advertisement space). Thus, Jerry's equal protection and due process claims cannot be maintained against State Farm. We overrule issues two and three.

■ In his fourth issue, Jerry contends that the family member exclusion violates article XII, section 2 of the Texas Constitution. *See* Tex. Const. art. XII, § 2. Article XII, section 2 provides: "General laws shall be enacted providing for the creation of private corporations, and shall therein provide fully for the adequate protection of the public and of the individual stockholders." *Id.* Jerry argues that any law that even allows—much less requires—the family member exclusion fails to comply with this constitutional mandate. Construing his arguments liberally, we assume that Jerry is challenging the authority of the Board of Insurance, in adopting form policies pursuant to section 5.06 of the Insurance Code, to adopt a form policy that contains such an exclusion. *See* Tex. Ins. Code § 5.06 (requiring Board of Insurance to adopt policy forms for motor vehicle insurance). However, article XII, entitled "Private Corporation," applies to the creation of private corporations. *See* Tex. Const. art. XII. Section one, entitled "Creation by General Laws," states that "[n]o private corporation shall be created except by general laws." *Id.* art. XII, § 1. Read in context, then, section 2 requires that private corporations be created by general laws that protect the public and the shareholders of the private corporation. *See id.* § 2. Thus, article XII applies to laws creating private corporations, not to laws regulating insurance policy forms. *See Miller v. Davis*, 136 Tex. 299, 150 S.W.2d 973, 976, 978 (1941) (distinguishing between public corporations, which are " 'connected with

the administration of the government'" and are not covered by Article XII, and private corporations, which are all other corporations and are covered by Article XII, and concluding that special law purporting to create private corporation was void for violation of article XII, section 1) (quoting 13 Am. Jur., p. 171, sec. 17 and notes); *City of Tyler v. Texas Emp'rs Ins. Ass'n*, 288 S.W. 409 (Tex. Comm'n App. 1926, *holding approved*) (holding that Texas Employers' Insurance Association was not private corporation for purposes of Article XII, section 2); Tex. Att'y Gen. Op. No. 2971 (1935) (ruling that Bank Deposit Insurance Corporation was not covered by Article XII, section 1 because it was instrumentality of government).

■ Further, even if article XII, section 2 somehow applied to section 5.06, the proper defendants in a declaratory judgment action seeking a declaration that a statute is unconstitutional are the responsible governmental agencies. *See* Tex. Civ. Prac. & Rem. Code § 37.006(b) (waiving governmental immunity for claim that statute is invalid by requiring that governmental entities be made parties and requiring that attorney general be served with copy and provided opportunity to be heard); *Texas Dep't of Transp. v. Sefzik*, 355 S.W.3d 618, 622 n.3 (Tex. 2011) (per curiam) (stating that in proceeding involving validity of statute, governmental entities must be joined and attorney general notified). Thus, as with his other constitutional claims, Jerry's claim under article XII, section 2 does not lie against State Farm. *See Texas Lottery Comm'n v. First State Bank of DeQueen*, 325 S.W.3d 628, 634 (Tex. 2010) (stating that governmental agencies that may be bound by court's declaration on statutes must be joined in suits to construe legislative pronouncements) (citing *Texas Educ. Agency v.*

*Leeper*, 893 S.W.2d 432, 446 (Tex. 1994)). We overrule Jerry's fourth issue.

### Unconscionability

■ In his fifth issue, Jerry argues that the family member exclusion is unconscionable. He recites "the basic test for unconscionability"— "whether, given the parties' general commercial background and the commercial needs of the particular trade or case, the clause involved is so one-sided that it is unconscionable under the circumstances existing when the parties made the contract." *See In re First-Merit Bank, N.A.*, 52 S.W.3d 749, 757 (Tex. 2001) (orig. proceeding). Applying this test to the facts of this case, Jerry contends that (1) Jerry is a typical consumer while State Farm is the largest insurance producer in Texas, (2) motorists must be able to buy insurance sufficient to protect them, and the Texas insurance industry has no need to sell, exclusively, policies that leave insureds exposed, and (3) the insurance contract is completely one-sided because Texas law requires Jerry to have auto insurance with a family member exclusion. We do not find these arguments persuasive.

In *Fortis Benefits v. Cantu*, 234 S.W.3d 642, 650 n.53 (Tex. 2007), the Texas Supreme Court addressed an insured's similar arguments concerning a subrogation clause. Cantu argued that the equitable "made whole" doctrine—the rule that an insurer is not entitled to subrogation of medical benefits paid to the insured unless the insured has been "made whole"—precluded enforcement of the subrogation clause. *Id.* at 644. The court disagreed and held that the made whole doctrine had to "yield to Fortis's right to contractual subrogation under the plain terms of the insurance policy." *Id.* Cantu attempted to avoid the policy's express language by arguing that contractual abrogation of the

"made whole" doctrine was unconscionable. *Id.* at 650 n.53. The Supreme Court stated that it is not per se unconscionable for an insurer to "seek to reduce its risk and boost its solvency by including a subrogation and/or reimbursement clause" and that Cantu had not produced any evidence of duress or unconscionability. *Id.*

 We likewise conclude here that it is not per se unconscionable for an insurer to "reduce its risk and boost its solvency" by including a family member exclusion that is promulgated in a state-approved form and complies with the Texas Motor Vehicle Safety Responsibility Act and that the record contains no evidence that establishes unconscionability.[13] *See id.; see also Bandas Indus., Inc. v. Employers Fire Ins. Co.,* 585 S.W.2d 344, 346 (Tex. Civ. App.–Austin 1979, no writ) (concluding that state-approved, form retrospective premium endorsement used throughout state, for which insurer did not set rates, dictate terms, or violate any rule or regulation of Insurance Board, was not unconscionable). As the Supreme Court stated in *Cantu,* "it remains the better policy for the contracts of insurance to be changed by the public body charged with their supervision, the State Board of Insurance, or by the Legislature, rather than for this Court to contravene the express language of insurance contracts with equitable arguments." 234 S.W.3d at 649 (internal quotations and ci-

tations omitted). Informed by the Supreme Court's decisions in *Johnson, Sanford,* and *Cantu,* we cannot conclude that the family member exclusion is unconscionable. We overrule Jerry's fifth issue.

### Time of Application

 In his sixth issue, Jerry argues that the trial court erred in applying the family member exclusion at the time of the accident rather that at the time the claim was made. The auto policy family member exclusion excludes from liability coverage bodily injury to "any *family member,* except to the extent of the minimum limits of Liability Coverage required by Texas [Revised] Civil Statutes, Article 6701h, entitled 'Texas Motor Vehicle Safety–Responsibility Act.'" "Family member" is defined as "a person who is a resident of your household and related to you by blood, marriage, or adoption." Jerry argues that the use of the verb "is" in the definition of family member means that the determination of whether an injured party is a family member—or "resident" of the policyholder's household—is determined at the time the claim is made, not at the time of the accident.[14] He cites the rule that, "[w]hen interpreting an exclusionary clause, a court must adopt the construction urged by the insured as long as that construction is not unreasonable, even if the construction urged by the insurer appears to be

---

**13.** Jerry points us to the affidavit of his insurance attorney expert, Jerry's affidavit testimony that he requested "full coverage polices," the lack of negotiation involved in the purchase of a form policy, the unequal bargaining power of the parties, and the one-sided nature of the contract. However, even assuming, as Jerry argues and as the *Cantu* court took as true, that insurance contracts are contracts of adhesion—that is, contracts in which one party has absolutely no bargaining power or ability to change the terms—adhesion contracts are not automatically unconscionable, and we are not persuaded that the evidence Jerry cites proves that the family member

exclusion is unconscionable. *See Fortis Benefits v. Cantu,* 234 S.W.3d 642, 650 n.53 (Tex. 2007).

**14.** Jerry agrees that "liability coverage" is determined at the time of the accident but distinguishes between that determination and the determination of whether the family exclusion applies. However, *when* Jacob's "residency" is assessed ultimately determines *whether* there is "liability coverage," and we find this to be a distinction without a difference.

more reasonable or a more accurate reflection of the parties' intent." *See Gastar Expl., Ltd. v. U.S. Specialty Ins.*, 412 S.W.3d 577, 583 (Tex. App.–Houston [14th Dist.] 2013, pet. denied).

State Farm argues that Texas courts uniformly determine "residency" of a family member as of the time of the accident and that the trial court did not err in doing the same. We agree. In applying various auto policy provisions, our sister courts have determined residency at the time of the accident. *See Anderson v. Texas Farm Bureau Mut. Ins. Co.*, No. 11-13-00004-CV, 2014 WL 3698313, at *1, *1–2, *3–4, 2014 Tex. App. LEXIS 8020, at *1, *2–3, *9 (Tex. App.–Eastland July 24, 2014, no pet.) (mem. op.) (applying UM provision); *Brown v. Tucker*, 652 S.W.2d 492, 494 (Tex. App.–Houston [1st Dist.] 1983, writ ref'd n.r.e.) (same); *Southern Farm Bureau Cas. Ins. Co. v. Kimball*, 552 S.W.2d 207, 207–08, 210 (Tex. Civ. App.–Waco 1977, writ ref'd n.r.e.) (construing UM, personal injury protection, and death indemnity benefits provisions); *Boon v. Premier Ins. Co.*, 519 S.W.2d 703, 703–05 (Tex. Civ. App.–Texarkana 1975, no writ) (interpreting provision for medical payments); *Garcia v. Southern Farm Bureau Cas. Ins. Co.*, 490 S.W.2d 616, 617 (Tex. Civ. App.–El Paso 1973, no writ), *disapproved of on other grounds by Westchester Fire Ins. Co. v. Tucker*, 512 S.W.2d 679, 685 (Tex. 1974) (applying UM coverage); *Travelers Indem. Co. v. Mattox*, 345 S.W.2d 290, 291–92 (Tex. Civ. App.–Texarkana 1961, writ ref'd n.r.e.) (determining insurer's duty to indemnify policyholder's son against claim by stranger to policy under liability provision); *Travelers Indem. Co. v. American Indem. Co.*, 315 S.W.2d 677, 678–79, 681 (Tex. Civ. App.–Fort Worth 1958, no writ) (same in suit between insurers); *Arellano v. Maryland Cas. Co.*, 312 S.W.2d 701, 702 (Tex. Civ. App.–El Paso 1958, no writ) (applying

medical payments provision); *see also Bednarz v. Continental Ins. Co.*, 453 F.2d 372, 373 (5th Cir. 1972) (per curiam) (applying Texas law and holding that daughter was not resident of insured father's household for purposes of liability coverage "on August 22, 1968," date of accident); *Rust v. Texas Farmers Ins. Co.*, 341 S.W.3d 541, 545, 551 (Tex. App.–El Paso 2011, pet. denied) (upholding trial court's judgment against plaintiff where homeowner's policy excluded bodily injury coverage for resident of premises and plaintiff was resident of premises at time of accident).

Further, we agree with State Farm that Jerry's interpretation of the family member exclusion is unreasonable. Under Jerry's construction, a policyholder could defeat application of the exclusion and create coverage simply by moving the family member out of the home after an accident but prior to filing a claim, rendering the family exclusion meaningless. *See Plains Expl. & Prod. Co. v. Torch Energy Advisors Inc.*, 473 S.W.3d 296, 305 (Tex. 2015) ("[W]e consider the entire writing, harmonizing and giving effect to all the contract provisions so that none will be rendered meaningless."); *Charida*, 259 S.W.3d at 872–73 ("We construe insurance contracts under the same rules of construction that govern ordinary contracts."). Based on the plain language of the family member exclusion and guided by the Texas Supreme Court's decisions in *Johnson* and *Sanford*, we conclude that Jerry's interpretation is unreasonable. *See Greene*, 446 S.W.3d at 766. Additionally, we observe that the record reflects and Jerry has acknowledged that the claims were asserted while Jacob lived in Jerry's home. Consequently, even if we were to adopt Jerry's interpretation, there would be no coverage under the plain language of the

exclusion. *See id.* We overrule Jerry's sixth issue.

### *Voidness*

In his seventh and final issue, Jerry argues that the family member exclusion is void because the policy fails to clearly describe its effect. He contends that the average consumer would not understand the exclusion, would not know the amount of the "minimum limits of Liability Coverage," would have trouble locating the Texas Motor Vehicle Safety Responsibility Act, and would have no idea from reading the policy whether the minimum limits are more or less than the amount of coverage set forth on the declarations page. Jerry thus argues that because the exclusion does not state that it covers claims by family members only to the extent of $25,000, the exclusion is unclear, ambiguous, void, and cannot be enforced.

 State Farm contends that Jerry asserts this argument for the first time on appeal and has therefore waived it. Jerry does not dispute that he raises this issue for the first time on appeal but responds that he did not receive the endorsement that revised the exclusion and therefore asserted a different argument based on the language of the original policy exclusion and that only when the trial court found in the Amended Final Judgment that Endorsement 593E applies was the issue of the effect of the endorsement raised. However, the record reflects that in its motion for summary judgment, State Farm referred to "Texas Personal Auto Policy Amendatory Endorsement," quoted

its language, and attached a copy as an exhibit.[15] In any event, because Jerry did not raise this issue in the trial court, we may not consider it on appeal. *See* Tex. R. Civ. P. 166a(c) (providing that issues not expressly presented to trial court in summary judgment motion or response shall not be considered on appeal as grounds for reversal); *D.R. Horton–Tex., Ltd. v. Markel Int'l Ins. Co.*, 300 S.W.3d 740, 743 (Tex. 2009) ("A non-movant must present its objections to a summary judgment motion expressly by written answer or other written response to the motion in the trial court or that objection is waived."); *Lopez v. Munoz, Hockema & Reed, L.L.P.*, 22 S.W.3d 857, 862 (Tex. 2000) ("On an appeal from summary judgment, we cannot consider issues that the movant did not present to the trial court."); *McConnell v. Southside Indep. Sch. Dist.*, 858 S.W.2d 337, 341 (Tex. 1993) (explaining that summary judgment motions and responses must stand or fall on grounds expressly presented to trial court). Accordingly, we overrule Jerry's seventh issue.

### Jacob's Appeal—UIM Coverage under the Auto Policy

 In a single issue, Jacob argues that the trial court erred in finding that the auto policy does not afford UIM benefits to Jacob.[16] The UIM provision affords coverage for bodily injury that a *"covered person* is legally entitled to recover from the owner or operator of an *uninsured motor vehicle."* "Covered person" is defined to include any family member. "Uninsured motor vehicle" is defined to

---

15. In addition, the record reflects that in arguing that the original policy exclusion language was void, Jerry cited the Texas Supreme Court's holding in *Johnson* that an exclusion limited to claims exceeding the statutory minimum limits does not violate public policy and acknowledged that many insurers now include such an exclusion.

16. In his issue, Jacob also asserts that the auto policy's family member exclusion is invalid and unenforceable and incorporates Jerry's arguments on that issue. To the extent Jerry challenges the validity and enforceability of the family member exclusion, we overrule his issue for the reasons stated in our discussion of Jerry's appeal.

include an underinsured motor vehicle, which is further defined, in relevant part, as "one to which a liability bond or policy applies at the time of the accident but its limit of liability ... is not enough to pay the full amount the covered person is legally entitled to recover as damages." "Uninsured motor vehicle" is further defined to exclude any vehicle "[o]wned by or furnished or available for the regular ·use of you or any *family member*." [17] State Farm argues that Jacob is not entitled to UIM coverage because he has already recovered the full amount of liability limits under the same policy. [18] Jerry argues that the availability of the $25,000 minimum statutory liability coverage does not eliminate his right to UIM benefits. We agree with State Farm.

The Texas Supreme Court has stated, that "[b]y purchasing [UM/UIM] coverage along with basic liability coverage, the insured has expressed an intent not only to protect others from his or her own negligence but also to protect that person's own family and guests from the negligence of others." *Stracener v. United Servs. Auto. Ass'n*, 777 S.W.2d 378, 384 (Tex. 1989). Since then, Texas courts have held that "the purpose of [UIM coverage] is to protect the insured, his family, and his guests from the 'negligence of others' " who are "strangers to the policy holder," not from the negligence of the policyholder or his family members. *See Charida*, 259 S.W.3d at 875–76; *accord Griffin*, 868 S.W.2d at 869; ("It is not the function of UIM coverage to operate as liability insurance and protect family members from their own negligence in owning and operating an underinsured automobile."); *Bergensen v. Hartford Ins. Co. of the Midwest*, 845 S.W.2d 374, 377 (Tex. App.–Houston [1st Dist.] 1992, writ ref'd) (concluding that underinsured provision was intended to protect policyholder from negligence of "*other* motorists who failed to maintain adequate coverage *on their vehicles*" and that "negligence of others" refers to negligence of persons not members of policyholder's family); *Rosales v. State Farm Mut. Auto. Ins. Co.*, 835 S.W.2d 804, 806 (Tex. App.–Austin 1992, writ denied) (stating that insured purchased UIM coverage to protect passengers "from the negligence of *other uninsured and underinsured drivers*," not for purpose of increasing her policy limits or protecting passengers from her own negligence).

UIM coverage is not available for damages sustained by a passenger who is entitled to the full amount of liability under the same policy for injuries caused by the same insured driver. *Rosales*, 835 S.W.2d at 806 (concluding that "UIM coverage is not available for damages sustained by a passenger who has already recovered the full amount of liability limits under that same policy" and holding that injured passengers could not recover both liability and UIM benefits under driver's policy for damages caused by driver's negligence). To allow a passenger—whether a guest or

---

**17.** This portion of the definition of "uninsured vehicle" is commonly referred to as the "definitional exclusion" or, less often, the "family use exception." *See, e.g., Hunter v. State Farm Cty. Mut. Ins. Co.*, No. 02-07-00463-CV, 2008 WL 5265189, 2008 Tex. App. LEXIS 9481 (Tex. App.–Fort Worth Dec. 18, 2008, no pet.) (mem. op.) (referring to "family use exception"); *Charida v. Allstate Indem. Co.*, 259 S.W.3d 870 (Tex. App.–Houston [1st Dist.] 2008, no pet.) (referring to "definitional exclusion"); *Farmers Tex. Cty. Mut. Ins. Co. v. Griffin*, 868 S.W.2d 861 (Tex. App.–Dallas 1993, writ denied) (same); *Rosales v. State Farm Mut. Auto. Ins. Co.*, 835 S.W.2d 804 (Tex. App.–Austin 1992, writ denied) (same).

**18.** Although Jacob has not accepted the offer, State Farm has agreed to pay the statutory minimum of $25,000 under the liability portion of the auto policy.

a family member—to recover both liability and UIM benefits under the same insured's policy for damages caused by the insured "converts the insured's UIM coverage into a second layer of liability coverage." *Griffin*, 868 S.W.2d at 868 (reasoning that insured purchased UIM coverage to protect himself against irresponsible drivers in other automobiles, that neither insurer nor insured contemplated recovery under both provisions in cost of UIM coverage, and that disallowing such coverage fulfills object of UIM statute and intent of insured driver in purchasing UIM coverage); *accord Charida*, 259 S.W.3d at 876; *Rosales*, 835 S.W.2d at 806. Thus, while an injured guest can recover liability benefits from the insured driver and UIM benefits under his own policy—assuming his damages exceed the insured driver's liability limits—an injured family member covered under the same policy as the driver "is resigned to only the liability portion of that policy" even if his damages exceed the policy's liability limits. *Charida*, 259 S.W.3d at 876; *Griffin*, 868 S.W.2d at 867–68.

Jacob argues that these cases are irrelevant to this case because they do not involve the "regular use" exclusion. Jacob refers to what is commonly referred to as the "definitional exclusion" or "family use exception," which excludes from the definition of "uninsured motor vehicle" any vehicle "[o]wned by or furnished or available for the regular use of you or any *family member*." *See Hunter v. State Farm Cty. Mut. Ins. Co.*, No. 02–07–00463–CV, 2008 WL 5265189, 2008 Tex. App. LEXIS 9481

(Tex. App.–Fort Worth Dec. 18, 2008, no pet.) (mem. op.) (referring to "family use exception"); *Griffin*, 868 S.W.2d 861 (referring to "definitional exclusion); *Rosales*, 835 S.W.2d 804 (same). Jacob argues that he is entitled to UIM coverage because Jerry did not own the rental vehicle he was driving at the time of the accident and it was not "available for the regular use" of Jerry and his family.

It appears that no Texas court has addressed the meaning of "regular use" as it relates to a rental car in the context of UM/UIM coverage.[19] Jacob contends that the "consensus from other jurisdictions is that a temporary rental vehicle is not one 'available for the regular use' of a named insured." He cites *American States Insurance Company v. Tanner*, in which the Supreme Court of West Virginia held that the use of a rental vehicle driven as a replacement for an insured vehicle under a separate auto policy was not "regular use." 211 W.Va. 160, 563 S.E.2d 825, 827, 834 (2002). However, the *Tanner* court construed an exclusion under liability coverage, and the case involved claims brought by strangers to the policy who were struck by the insured driver. *See id.* at 827–28. It did not involve UIM coverage or a passenger seeking coverage under both the liability and UIM provisions of the same policy. Nor do the other cases cited by the *Tanner* court and relied on by Jacob involve UIM coverage or a passenger seeking both liability and UIM coverage under the same policy. *See Factory Mut. Liab. Ins. Co. of Am. v. Continental Cas. Co.*, 267 F.2d 818,

**19.** The line of Texas cases interpreting the definitional/family use exclusion involved drivers using their own insured vehicles. *See, e.g., Charida*, 259 S.W.3d at 874 (holding that vehicle in which daughter passenger was injured was owned by insured father and under plain language of policy was not "uninsured"); *Griffin*, 868 S.W.2d at 864 (stating that parties stipulated that vehicle was

"owned by or available for the regular use of" insured father and concluding that as matter of law vehicle did not qualify as uninsured/underinsured motor vehicle under terms of auto policy); *Rosales*, 835 S.W.2d at 805 (stating that parties stipulated that vehicle in which passengers were riding when injured was "owned by or available for the regular use of" insured driver).

818–20 (5th Cir. 1959) (per curiam) (construing exclusion under liability coverage for claim by stranger to policy); *Continental Cas. Co. v. Suttenfield*, 236 F.2d 433, 434–35 (5th Cir. 1956) (same); *State Farm Mut. Auto. Ins. Co. v. Robinson*, 129 Idaho 447, 926 P.2d 631, 633 (1996) (same); *George B. Wallace Co. v. State Farm Mut. Auto. Ins. Co.*, 220 Or. 520, 349 P.2d 789, 790 (1960) (addressing insured's claim for collision damage to borrowed vehicle); *Strickland v. State Farm Mut. Auto Ins. Co.*, 133 N.C.App. 71, 514 S.E.2d 304, 304–05 (1999) (involving exclusion under liability coverage of motorcycle policy and claims by strangers to policy); *Mercury Ins. Grp. v. Checkerboard Pizza*, 12 Cal. App.4th 495, 497, 15 Cal.Rptr.2d 657 (Cal. Ct. App. 1993) (interpreting exclusion for business use of nonowned vehicle in context of claim by stranger to policy); *Comunale v. Traders & Gen. Ins. Co.*, 116 Cal. App.2d 198, 253 P.2d 495, 496–97 (1953) (construing exclusion under liability coverage where insured who was driving borrowed car injured stranger to policy); *Vern v. Merchants Mut. Cas. Co.*, 21 Misc.2d 51, 52, 118 N.Y.S.2d 672 (N.Y. App. Term 1952) (construing exclusion where insured sought personal injury protection coverage under own policy). We do not find these cases applicable on the facts of this case.

We find more applicable *Parekh v. Mittadar*, in which the Louisiana First Circuit Court of Appeals addressed a case with facts similar to this case that involved UM coverage. *See* 2011–1201 (La. App. 1 Cir. 6/20/12), 97 So.3d 433. In *Parekh*, the insured was driving in Louisiana in a car rented in Texas when he lost control of the vehicle and veered off of the highway, causing the vehicle to flip over and injuring his passengers. *Id.* at 435. No other vehicle was involved in the accident. *Id.* The passengers filed a claim for liability coverage under the rental liability policy

and received policy limits. *Id.* at 435–46. The passengers also sought UM/UIM coverage under the same policy. *Id.* at 436. Construing an exclusion essentially identical to the one at issue here, the court concluded that under Louisiana law, the rental vehicle was "accessible, obtainable, and ready for [the insured's] immediate use," i.e., "available for the insured's regular use," during the term of the rental agreement and therefore did not qualify as an "uninsured motor vehicle" under the terms of the policy. *Id.* at 438–39. Accordingly, the court held that the passengers were not entitled to UM coverage. The court also observed:

We note that this result would be the same under Texas law as well. In interpreting the exclusion above, Texas courts have determined that this exclusion operated to prevent the injured occupants of a vehicle from collecting the liability benefits and UM benefits under a single policy. In these cases, the Texas courts relied, in part, on language from the Texas Supreme Court in *Stracener v. United Services Auto. Ass'n*, 777 S.W.2d 378, 384 (1989), in which the court stated that "[b]y purchasing [UM] coverage along with basic liability coverage, the insured has expressed an intent not only to protect others from his or her own negligence but also to protect that person's own family and guests from the negligence of others." The Texas courts have interpreted the phrase "negligence of others" to refer to the negligence of those in other automobiles, which is clearly not applicable to this matter, as this was a single vehicle accident involving only the negligence of Mr. Mittadar. Specifically, the Texas courts noted that the insured had purchased UM coverage to protect himself and his guests from negligent, financially irresponsible drivers in other automobiles.

Allowing a guest passenger to recover both liability and UM benefits from the same insured's policy converts the UM coverage into a second layer of liability insurance, which was not contemplated in the policy costs. Accordingly, under Texas law, no UM coverage would be available under the policy at issue.

*Id.* at 439–40 (internal citations omitted).

■ Jacob seeks benefits under Jerry's UIM coverage, which is intended to protect Jerry and other "covered persons" from the negligence of others, not from their own negligence. *See Stracener*, 777 S.W.2d at 384; *Charida*, 259 S.W.3d at 875–76; *Griffin*, 868 S.W.2d at 869; *Bergensen*, 845 S.W.2d at 377; *Rosales*, 835 S.W.2d at 806. Given the different purposes of liability and UIM coverages, informed by the Supreme Court's statement in *Stracener* concerning the intent of UM/UIM coverage, and persuaded by the reasoning of this Court and of our sister courts of appeals in prior cases construing UM/UIM coverage provisions, we agree with the Louisiana First Circuit Court of Appeals that under Texas law, a passenger may not recover under both the liability and UIM provisions of the same policy for damages caused by the same insured driver. Accordingly, we conclude that given the purpose and plain language of the UIM provision, the rental car Jerry was driving at the time of the accident is excluded from the definition of "underinsured motor vehicle." *See Greene*, 446 S.W.3d at 766; *Stracener*, 777 S.W.2d at 384; *Charida*, 259 S.W.3d at 875–76; *Bergensen*, 845 S.W.2d at 377; *Parekh*, 97 So.3d at 439–40.

Jacob argues that this reasoning is inconsistent with *Jankowiak v. Allstate Property & Casualty Insurance Company*, 201 S.W.3d 200 (Tex. App.–Houston [14th Dist.] 2006, no pet.) which he contends is

"[t]he case most similar" to this case. In *Jankowiak*, Laci Jankowiak was a passenger in Daniel Dellasala's vehicle when it was involved in a collision with Alejandra Salas, an uninsured motorist. *Id.* at 203. Jankowiak sued Dellasala and Salas, alleging that both drivers were at fault, and her own insurer. *Id.* Jankowiak settled with Dellasala for his maximum liability coverage and with her own insurer for her maximum UM coverage. *Id.* She then sought to recover from Dellasala's insurer his policy limits of UM coverage. *Id.* The trial court granted the insurer's motion for summary judgment, and Jankowiak appealed. *Id.* On appeal, in concluding that Dellasala's insurer was obligated to pay Jankowiak UM benefits, the court explained that, as a guest occupant of Dellasala's vehicle, she was a "covered person" under his policy and was—to the extent her damages exceeded the liability coverage—entitled to UM coverage to the extent of *Salas's* fault. *Id.* at 209, 211. The court observed that to hold otherwise would allow Jankowiak to recover only for Dellasala's negligence and not for Salas's negligence. *Id.* at 212. In other words, the definitional exclusion or family exception did not apply; Salas's vehicle, not Dellasala's, was the "uninsured motor vehicle"; and the UM coverage under Dellasala's policy was for Salas's negligence, not Dellasala's. Here, the definitional/family use exclusion applies, there is no evidence that anyone except Jerry was at fault, and there is no other vehicle that could be the "uninsured motor vehicle." [20] Thus, *Jankowiak* is distinguishable, and we do not find our sister court's opinion persuasive on the facts before us. *Cf. Charida*, 259 S.W.3d at 875 (noting that there was nothing in record to suggest that anyone but insured father was at fault); *Parekh*, 97

---

**20.** The record contains no evidence that Jacob made any allegations that the driver of

the semi-truck was at fault or sought any coverage under the truck driver's insurance.

So.3d at 435 (describing single-vehicle accident).

Finally, to the extent Jacob argues that the statutory limitation on his recovery under the liability portion of Jerry's policy resulting from the family member exclusion distinguishes his liability recovery from a guest's recovery of the full liability limits stated in the policy, we do not agree that any such distinction leads to a different result. As the First Court of Appeals stated in *Charida*,

> [u]nder *Sanford/Johnson*, the insurer is obligated to pay insured family members the statutorily imposed minimum limit of liability insurance, and nothing in *Johnson* encourages the invalidation of the definitional exclusion at issue to award injured family members UIM benefits in addition to the statutorily imposed minimum liability limit. Allstate contends, and we agree, that to allow a family member to collect underinsured motorist benefits above the statutory minimum liability limits would render the supreme court's holding in *Johnson* meaningless. According to Allstate, "any family member whose recovery under the liability provisions of a policy was limited to the statutory minimum by the family member exclusion could simply turn to the underinsured motorist portion of the same policy to collect the balance.

259 S.W.3d at 876–77. We conclude that under the plain language of the UIM provision, Jerry's UIM coverage is not available to pay for damages to Jacob caused by Jerry. *See Greene*, 446 S.W.3d at 766; *Stracener*, 777 S.W.2d at 384; *Charida*, 259 S.W.3d at 875–76; *Griffin*, 868 S.W.2d at 869; *Parekh*, 97 So.3d at 439–40. We overrule Jacob's issue.

**State Farm's Appeal—Coverage under the Umbrella Policy**

In its first issue, State Farm argues that the trial court erred in finding that Jacob is entitled to recover benefits under the umbrella policy because the policy unambiguously provides that bodily injuries to an insured are not covered and it is undisputed that Jacob was an insured at the time of the accident. The umbrella policy's coverage clause provides coverage for damages that exceed the "retained limit" "[i]f a claim is made or suit is brought against an **insured** for damages because of a **loss** for which the **insured** is legally liable." [21] In Exclusion 13, the umbrella policy excludes coverage for "**bodily injury** or **personal injury** to any "**insured**," defined as "**you** and **your relatives** whose primary residence is **your** household." "Bodily injury" is defined as "physical injury, sickness, or disease to a person, including death resulting therefrom." "Relative" is defined as "any person related to **you** by blood, adoption, or marriage." Because these provisions parallel those in the family member exclusion of the auto policy, State Farm labels Exclusion 13 a "family member exception" and argues it should be construed in the same way as the family member exclusion in the auto policy and applied at the time of the accident.

Jerry argues that unlike the family member exclusion in the auto policy, Exclusion 13 is ambiguous with respect to liability claims. He contends that unlike the coverage clause and most of the other exclusions, it does not refer to "loss" and, unlike some of the exclusions, does not use the word "liability." He argues that while the auto policy expressly excludes "Liability Coverage ... for bodily injury," the

---

**21.** The parties disagree as to the amount of the retained limit under the umbrella policy in their briefing on State Farm's second issue, an issue we do not reach because of our disposition of State Farm's first issue.

umbrella policy excludes only "bodily injury," and the court may not insert language into the policy. He also observes that "bodily injury" is defined to include sickness and disease without any reference to "loss." Thus, under Jerry's analysis, Exclusion 13 excludes health claims, not liability claims, a construction he urges is consistent with the trial court's conclusion.

We do not find this argument persuasive. The auto policy includes several coverage sections: "Part A–Liability Coverage," "Part B1–Medical Payments Coverage," "Part B2–Personal Injury Protection Coverage," "Part C–Uninsured/Underinsured Motorists Coverage," and "Part D–Coverage for Damage to your Auto," each with its own exclusions. In contrast, the umbrella policy is exclusively a liability policy intended to provide coverage in excess of the underlying limits of liability in the auto policy, not coverage for the insured's own damages. *See C.L. Thomas, Inc. v. Lexington Ins. Co.*, No. 13-13-00566-CV, 2014 WL 4494516 at *1, 2014 Tex. App. LEXIS 10148 at *2 (Tex. App.–Corpus Christi Sept. 11, 2014, no pet.) (mem. op.) (stating that umbrella policy "covered liability for compensatory damages for personal injuries ... to the extent that such liability exceeded the applicable limits of certain other underlying policies"); *Leigh v. Kuenstler*, No. 14-08-00245-CV, 2009 WL 3126538, at *1, 2009 Tex. App. LEXIS 7633, at *2–3 (Tex. App.–Houston [14th Dist.] Oct. 1, 2009, no pet.) (mem. op.) ("Although she believed that the umbrella policy would afford coverage for her own medical expenses and damages she sustained as the result of an automobile accident with an underinsured motorist, Leigh admits that she simply assumed this to be the case. In fact, the umbrella policy afforded coverage only for Leigh's liability, and not for her own damages."); *Sidelnik v. Ameri-*

*can States Ins. Co.*, 914 S.W.2d 689, 693–94 (Tex. App.–Austin 1996, writ denied) (discussing nature of umbrella policies and stating that umbrella policy provided excess coverage for liability arising from automobile accident); *Celestino v. Mid–American Indem. Ins. Co.*, 883 S.W.2d 310, 311–12 (Tex. App.–Corpus Christi 1994, writ denied) (stating that combined umbrella policy provided excess coverage for automotive liability, general liability, and employer's liability); *see also Fisher v. State Farm Mut. Auto. Ins. Co.*, 371 Mont. 147, 305 P.3d 861, 865 (2013) (stating that umbrella policy "generally covers claims in excess of the insured's primary insurance but does not cover claims brought by an insured"). In short, it is well established that, unlike an auto policy that provides coverages other than liability—such as personal injury protection and medical payments—an umbrella policy is an excess liability policy only, absent express provisions to the contrary, which are not present here. Therefore, there is no need for the policy to specify that an exclusion is to "liability coverage," as Jerry contends.

Jerry claims that there are five problems with this reasoning: (1) it ignores the language of Exclusion 12, which includes the phrase "claim made or suit brought"; (2) it ignores the actual language of Exclusion 13; (3) it is not illogical for an umbrella policy to exclude health claims; (4) it is common in our society for companies to issue unnecessary warnings; and (5) it ignores the coverage clause. We do not find these arguments persuasive and find Jerry's reading of Exclusion 13 as a health care exclusion strained, at best. In addition to running contrary to the nature and purpose of umbrella policies, it ignores that the exclusion also excludes "personal injury," which is defined to include injuries

from false arrest, libel, slander, and invasion of privacy—injuries completely unrelated to "health care." It also ignores that the term "bodily injury" occurs in four other exclusions, making them, under Jerry's analysis, all health care exclusions. We agree with State Farm that Jerry's construction of Exclusion 13 as a health care exclusion is unreasonable. *See Greene*, 446 S.W.3d at 766 (stating that we interpret policy based on ordinary meaning of its words); *Plains Expl.*, 473 S.W.3d at 305 ("[W]e consider the entire writing, harmonizing and giving effect to all the contract provisions so that none will be rendered meaningless."); *Gastar Expl.*, 412 S.W.3d at 583 (stating that court must adopt construction urged by insured *as long as it is not unreasonable* ); *Charida*, 259 S.W.3d at 872–73 ("We construe insurance contracts under the same rules of construction that govern ordinary contracts.").

In its first issue, State Farm also argues that the trial court erred in concluding (1) that "the application of the definition of 'insured' in the Umbrella Policy occurs at the time the insured becomes 'legally liable' " and (2) that Jerry became legally liable on the date of the trial court's judgment. State Farm contends instead that under the terms of the umbrella policy, Jerry became legally liable at the instant that he negligently caused the accident that injured Jacob and that to apply the definition of insured at any time other than at the time of the accident leads to unreasonable results. We agree. As discussed above, Texas courts have determined residency at the time of the accident in construing coverage for family members under auto policies for UM/UIM benefits, medical payments, personal injury protection, death benefits, and the insurer's duty to indemnify against a claim by a stranger to the policy under the

liability provision. In addition, federal decisions construing umbrella policies under Texas law inform our decision. In *State Farm Fire & Casualty Co. v. Lange*, in construing an umbrella policy, the Fifth Circuit determined coverage for the policyholder's son by determining the son's residency at the time of the accident. 480 Fed.Appx. 309, 310 (5th Cir. 2012) (per curiam). Similarly, in a case determining coverage under an umbrella policy, the United States District Court for the Western District of Texas stated that whether the policyholder's son qualified as an insured and whether the insurer had a duty to defend him turned on whether the son's " 'primary residence' at the time of the accident was" the policyholder father's home. *State Farm Fire & Cas. Co. v. Neuman*, 186 F.Supp.3d 643, 652 (W.D. Tex. 2016).

In light of these decisions and for the reasons stated in our discussion of the determination of residency for purposes of the family member exclusion under the auto policy, we conclude that the determination of Jacob's residency for purposes of the umbrella policy's Exclusion 13 is based on Jacob's residency at the time of the accident. Just as it would defeat the intent of the auto policy family member exclusion to construe it to allow an insured family member to obtain coverage by moving out of the family residence after an accident but before filing a claim, it would also defeat the intent of Exclusion 13 to construe it as allowing an insured family member to obtain coverage by moving out of the family residence prior to a judgment determining the insured to be "legally liable." Such a construction would render Exclusion 13 meaningless. *See Plains Expl.*, 473 S.W.3d at 305; *Charida*, 259 S.W.3d at 872–73.

Further, even if we were to accept the trial court's interpretation of the policy

provisions, the record does not support the conclusion that Jerry became legally liable at the time of the trial court's judgment. Although the trial court's judgment "declared" that Jerry "is legally liable" for Jacob's damages, Jerry's liability was not before the court. The only causes of action before the court were claims for declaratory relief interpreting the family exclusions and UIM provisions of the auto and umbrella policies. Jacob asserted no claims against Jerry and did not seek a declaration or summary judgment as to Jerry's liability. Thus, there was no cause of action, summary judgment motion, or evidence to support the trial court's declaration that Jerry was legally liable. In short, there is no basis in the record for the trial court's purported determination that Jerry "is legally liable" and became legally liable on the date of the judgment. *See Rust*, 341 S.W.3d at 551 (holding that at time of summary judgment, insured was not "legally obligated" to pay damages to plaintiff for injuries resulting from occurrence to which policy applied because plaintiff had not obtained judgment against insured or entered into agreement establishing liability); *Graves v. Diehl*, No. 01-00-00412-CV, 2006 WL 1699527, at *10, 2006 Tex. App. LEXIS 5306, at *30–31 (Tex. App.–Houston [1st Dist.] 2006, pet. denied) (mem. op.) (holding that trial court abused its discretion where it rendered declaratory judgment on issue that was not presented by pleadings or evidence). We sustain State Farm's first issue.[22]

## CONCLUSION

We reverse the trial court's judgment that Jerry is entitled to coverage for the damages to Jacob under the umbrella policy and render judgment that Jerry take nothing by his claims under the umbrella policy. We affirm the trial court's judgment in all other respects.

---

22. Because our resolution of State Farm's first issue is dispositive, we do not reach its second issue, in which it challenges the trial court's determination as to the amount for which State Farm is liable under the umbrella policy or its third issue, in which it challenges certain of the trial court's findings of fact and conclusions of law for reasons that State Farm admits are largely subsumed in its arguments in its first issue.